### IN THE

# SUPREME COURT

#### OF THE

## STATE OF MISSOURI,

### JANUARY TERM, 1853, AT JEFFERSON CITY.

CARTER, Plaintiff in Error, *vs.* FELAND, Defendant in Error.

A., being about to travel abroad for his health, left his slaves with his brother, B., in Tennessee, to keep until his return, with the agreement that if he never returned, B. should become the owner of the slaves; A. remained abroad many years without being heard from, when B. gave the slaves to his son-in-law, who brought them to Missouri, and afterwards sold them to the defendant, who had no notice of A.'s claim; afterwards, A. returned and brought this suit to recover the slaves. *Held*,

1. The declarations of B., while in possession of the slaves, are not admissible in evidence against A.

2. In an action of trover, the measure of damages is the value of the thing converted, *at the time of the conversion.* Thus, A. was entitled to recover the value of a slave which died in the possession of the defendant after demand and refusal.

3. The 5th section of the act concerning fraudulent conveyances, (R. C. 1845,) which provides that a party remaining in possession of slaves five years under a pretended loan, shall be taken to be the owner as to his creditors and vendees, &c., does not apply to a loan, in another state, of slaves which the bailee afterwards brings into this state; at least not, unless the possession of the bailee, or those claiming under him, continues five years after the slaves are brought within this state.

Carter *v.* Feland.

4. The statute of limitations could not begin to run against A. until the possession of B., or those claiming unde, him, became adverse; which was not at least until B., by some act, assumed to himself the ownership of the slaves.

*Error to Buchanan Circuit Court.*

*James B. Gardenhire,* for plaintiff in error. 1. The declarations of James Carter were clearly inadmissible. There was no such privity between him and the plaintiff in error, as to render his declarations admissible. The plaintiff in error did not claim under James Carter, but James claimed under him. Before the declarations of a privy or agent are admissible, the privity or agency must be established by independent testimony. 2 Stark. 59. 5 Watts, 392. 2. The record shows that demand was made and suit brought, four years after the negro woman was brought to this state. The statute of fraudulent conveyances, if applicable at all to the case, could not operate until the slave was brought into this state. It is a law affecting the remedy only, and has no extra-territorial operation. It is like other statutes of limitation in this respect. *Strithorst* v. *Graeme,* 3 Wils. Rep. 145. *Williams* v. *Jones,* 13 East, 448, opinions of Lord Ellenborough & Bayley, J. *Bank of Alexandria* v. *Dyer,* 14 Pet. 141. *Field* v. *Dickenson,* 3 Ark. Rep. 409. *Wilson* v. *Appleton,* 17 Mass. 180. *Byrne* v. *Crowninshield,* 17 Mass. 55. *Bulger* v. *Roche,* 11 Pick. 36. *Dwight* v. *Clark,* 7 Mass. Rep. 515. *Ruggles* v. *Keeler,* 3 J. R. 264. 3. The facts of this case, as collected from James Carter's declarations, show a hiring, and not a gratuitous loan. The statute concerning fraudulent conveyances, therefore, does not apply. 4. The fourth instruction asked by the plaintiff in error ought to have been given. The death of the child, after demand, was defendant's loss.

*Vories,* for defendant in error. 1. The third instruction asked by plaintiff did not correctly state the rule as to the measure of damages, and was properly refused. 2. The

fourth instruction was properly refused, because it assumed that all the main issues were to be decided in favor of the plaintiff. 3. The sixth instruction was incorrect, in assuming that James Carter could not hold the negroes adversely, without a demand and refusal. The law on this point was correctly stated in the fifth, seventh and eighth instructions given for the plaintiff. 4. The tenth instruction asked by plaintiff was properly refused. There is no exception in the statute concerning fraudulent conveyances, in favor of either persons or property absent from the state. If there were no such exceptions in the statute of limitations, it would undoubtedly apply to foreigners, as well as to causes of action arising abroad. *Ruggles* v. *Keeler*, 3 J. R. 265, and cases there cited ; also 3 J. C. R. 217. Our statute of fraudulent conveyances affects the right of property, and not merely the remedy. 5. The eleventh instruction asked by plaintiff was properly refused, because there was no evidence of any *hiring*. 6. The declarations of James Carter, made while in possession of the negro, were properly admitted to explain the nature of his possession. *Oden* v. *Stubblefield*, 4 Ala. 40. 9 N. H. 271. 1 Greenl. Ev. 120, 189, 191. 2 Phill. Ev. 596–7–8, 601–2.

RYLAND, Judge, delivered the opinion of the court.

This was an action of trover, brought in the Buchanan Circuit Court, in December, 1847, to recover the value of a negro woman and child, which were alleged to be the property of plaintiff, and which the defendant had converted to his own use.

The defendant pleaded the general issue. Upon the trial of the cause, the plaintiff proved, that in the year 1831 or 1832, in the state of Tennessee, he was the owner of a negro woman, named Charlotte, and had her in his possession, and that she became the mother of the negro, Winny, named in the declaration ; that in the month of October, 1847, the defendant was in the possession of the said negro woman, Winny, in the

county of Buchanan and state of Missouri, who was about six-
teen or seventeen years old, and had had the possession of her
since the fall of 1844 ; that in October, 1847, before the com-
mencement of the suit, the plaintiff went to the house of de-
fendant in said county of Buchanan, and demanded of him said
negro, Winny, who then had a child about six months old, and
that defendant refused to give her up ; that the child, since
that time, died ; and that Winny was worth $400 or $500.
The defendant then proved, that after the possession of said
negro woman, Charlotte, and her child Winny, by the plain-
tiff, in the year 1831 or 1832, James Carter, a brother of the
plaintiff, had them in his possession in the state of Tennessee.
The defendant then offered to prove the declarations of said
James Carter, while he had said negroes in his possession, in
reference to his right to said negroes, to which plaintiff object-
ed, but the court overruled the objection and the plaintiff ex-
cepted.   It was then proved, that the said James Carter, while
he so had the negroes in his possession, stated, that about the
year 1831 or 1832, the plaintiff placed the said negro woman,
Charlotte, and her child, Winny, in his possession, to keep for
plaintiff until his return, as he was going to travel, but if he
never returned, the said negroes were to become the property
of said James Carter ; that plaintiff then left the state of
Tennessee, and did not return, until after the negro Winny was
brought to Missouri ; that James Carter retained possession of
said negroes from the year 1831 or 1832, until 1841, when,
no account having been heard of plaintiff, said James Carter
claimed the negroes as his own, and continued so to claim said
negroes, until they left Tennessee, because he said, that plain-
tiff was dead, which was generally believed to be the fact.   He
said that the negroes were his, by the terms of his agreement
with the plaintiff, and that he would do with them as he pleas-
ed.   In 1843, James Carter tried to get one Daniel Hogan,
who was going to Missouri, to take the negro, Winny, along
with him, and deliver her to one Richard Hogan, who then re-
sided in Buchanan county, in the state of Missouri, and was

the son-in-law of the said James Carter, but that said Daniel
Hogan declined to bring said negro with him to Missouri; that
in the spring of 1844, no account having been heard of the
plaintiff, James Carter still had possession of said negroes,
and claimed them as his own, and procured one Mathew Fer-
rell to bring the negro, Winny, from Tennessee, and deliver her
to Richard Hogan, in Buchanan county, Missouri. The said
Richard Hogan, having acquired the possession of said negro
woman, by gift, from his father-in-law, James Carter, in the
fall of 1844, sold her for $400, to defendant, Feland, who
had no notice of the plaintiff's right or claim to said negro,
Winny. It was also proved that, during all the time that James
Carter had possession of said negroes, it was notorious through
the neighborhood where the negroes were, that they were the
property of the plaintiff, and equally notorious that they were
to become the property of James Carter, if the plaintiff never
returned, which was all of the evidence in the cause.

The plaintiff then moved the court to give the following in-
structions:

1. That if the plaintiff demanded the negroes in the decla-
ration mentioned, before the commencement of this suit, and
they were his property, and the defendant refused to give them
up, and appropriated them to his own use, it gives the plain-
tiff a right of recovery, if not precluded by other instructions.

2. If they find for the plaintiff, the measure of damages is
the value of the negroes, at the time of the appropriation, with
interest on that amount, from the time of appropriation to the
present time.

3. If they find for the plaintiff, and do not choose to give
interest, they may find the value of the negroes at the time that
the defendant appropriated them, adding thereto the value of
the services of the negro woman, from the time the defendant
so appropriated her, to the present time.

4. If the negro child in the declaration mentioned, did not
die until after the plaintiff demanded, and the defendant re-

fused to give it up, the plaintiff is entitled to recover in this action the value of the child, at the time of demand and refusal.

5. If the plaintiff placed said negro woman in the possession of James Carter, under whom the defendant claims, to be kept by the said James Carter for the plaintiff, and delivered up to plaintiff when called for, but if plaintiff died, then said negro to be the property of James Carter, and if the said James Carter and those under him kept the possession of said negro agreeably to, and consistently with said terms, down to a period within less than five years of the commencement of this action, then the statute of limitations does not bar the plaintiff's right.

6. If James Carter came into possession, and he and those claiming under him retained possession of the said negro in the manner set forth in the next preceding instruction, then the statute of limitations does not defeat the plaintiff's right, unless the jury believe from the evidence, that the plaintiff made demand upon said James Carter or those under him, five years or more before the commencement of this suit.

7. If James Carter, under whom defendant claims, had adverse possession of said negro woman for five years, in the state of Tennessee, but during all that time, plaintiff was absent from the said state of Tennessee, then such adverse possession does not affect the right of the plaintiff, so far as the statute of limitations is concerned ; but, in order to defeat the right of the plaintiff by virtue of the statute of limitations, said adverse possession must have been continued for five years after the return of the plaintiff to the state of Tennessee.

8. If the agreement, under which plaintiff put the said negroes in possession of James Carter, under whom defendant claims by purchase from Hogan, was upon valuable consideration and *bona fide*, the plaintiff's right is not affected by the act concerning fraudulent conveyances.

9. If the conveyance of said negro by plaintiff to James

Carter was made for their joint benefit, it was upon valuable consideration.

10. That, unless the jury believe from the evidence, that the said negro was in this state five years before demand made of her, upon defendant by plaintiff, they will find for plaintiff, if they believe that the transaction in proof between plaintiff and James Carter, in relation to said negro woman, was a gratuitous loan.

11. If the plaintiff placed the negro woman in the possession of James Carter, who was to keep her until plaintiff's return, and then give her up to him, and if the plaintiff never returned, then James Carter was to have her—in the absence of all other testimony, the plaintiff, upon his return, had the right to receive of James Carter, not only the negro woman, but the value of her services also ; and those facts would, therefore, constitute the transaction between Henry and James Carter a hiring and not a loan.

12. If the jury believe from the evidence, that the plaintiff, intending to travel, placed the negro woman in controversy and her mother, in possession of James Carter (under whom defendant claims,) under an agreement that said James Carter should take care of said negroes for the plaintiff, and return them to him when demanded, and, upon the death of sai plaintiff, said negroes to be the property of said James Carter, then the statute concerning fraudulent conveyances does not affect the right of the plaintiff.

The first, second, fifth, seventh and eighth of which said instructions were given by the court ; but the third, fourth, sixth, ninth, tenth, eleventh and twelfth were refused by the court, to which refusal the plaintiff excepted.

The court then, on the application of the defendant, instructed the jury as follows :

1. If the jury believe from the evidence, that defendant, Feland, bought the negro woman in controversy from one Hogan, and Hogan got her by gift from one James Carter, who was his father-in-law ; and that defendant, Hogan, and

said James Carter together, had held adverse possession of said negro woman, for five years before the commencement of this suit, they will find for defendant.

2. When a person has the possession of personal property, claiming such property as his own absolutely, it is an adverse possession.

3. That, if the plaintiff, when he was about to leave the state of Tennessee, placed the negro slaves in controversy in the possession of James Carter, who was to retain the possession of them, but was to re-deliver them to plaintiff, if he came back, but if he did not, said slaves were to be the property of said James Carter, and that by virtue of said agreement, they remained in the possession of James Carter, until he gave the woman to Hogan, and that he did so give her, and that Hogan sold her to defendant, and defendant had no knowledge of the claim of plaintiff, and that said woman had remained in the possession of James Carter and those claiming under him, as above set forth, for more than five years before the sale to defendant and the commencement of this suit, without demand made and pursued by due process of law, they will find for defendant.

4. That, if the plaintiff placed his negroes in the possession of his brother, James Carter, for an indefinite time, and that James Carter was to keep the negroes and clothe and feed them, and pay their other necessary and usual expenses during plaintiff's absence, and was to pay the plaintiff no consideration for the use of said negroes, then there was not such a consideration as would take the case out of the statute of fraudulent conveyances.

To the giving of which said instructions by the court, the plaintiff objected, but the court overruled the objection and the plaintiff excepted.

Verdict and judgment were rendered for the defendant, and the plaintiff filed his motion for a new trial ; which was overruled by the court, and the case is brought to this court by writ of error.

Carter *v.* Feland.

Upon this statement of the case, it will be seen, that three questions arise, of much importance in the settlement of this cause between these parties : First, The competency of the evidence in relation to James Carter's statements ; secondly, In relation to the right of the plaintiff to recover damages for the child of the woman, Winny, which died after the demand made in this case, and after the conversion alleged ; thirdly, As to the loan of the negro woman, Winny, and the possession of her for five years, under the 5th section of the act concerning fraudulent conveyances.  R. C. 1845, p. 527.

1. In regard to the statements of James Carter, this court is of opinion that such evidence was clearly incompetent. James Carter claimed title under the plaintiff, and the defendant under Carter.   Now to permit the defendant to prove what Carter said in support of his own title, would be very much like permitting him to give his own statements in evidence for himself ; this is too absurd to notice further.   If James Carter was a competent witness, then he or his deposition should have been produced.   It was erroneous to let his statements be given in evidence.

2. As to the second question, this court is also of opinion, that the court below ruled against the law.   In actions of trover, or of trespass *de bonis asportatis*, the plaintiff is entitled to recover damages, to the value of the property converted or carried away, at the time the conversion or trespass took place.   Therefore, if after demand and refusal to deliver, the negro child died, and was, at the time of demand made, the property of the plaintiff, he was entitled to recover the value of the child at the time of demand.

By the action of trover, the plaintiff seeks for damages to the value of his property, and a judgment confirms the title of the property in the defendant, or at least, execution and satisfaction thereon will pass it to him, from the date of the judgment.   It has been ruled otherwise in detinue ; for it is said, there, the plaintiff still seeks the property in specie, and he disaffirms the trespass, or the taking and detaining ; but

even in this action, some courts have permitted recovery for full value to be had, although the property sued for, be dead, at the time of the verdict. However, it is not necessary for this point to be settled now, as it does not arise in this case. The action here *is* trover, and there *is* no doubt of the plaintiff's right to recover for the value of the negro child which died after demand and refusal, and before judgment, if he was entitled to the negro, at the time the demand was made.

3. On the third point, we think the court also erred. The facts in the case show, that the negro woman had not been in this state five years before suit was brought for her. She was brought here in the spring of 1844, and the suit was commenced in December, 1847. She had not been in this state long enough for her then possessor, the defendant in this action, to set up claim to her under the statute of fraudulent conveyances of this state, the 5th section of which is as follows: "When any goods or chattels or slaves shall be pretended to have been loaned to any person, with whom, or those claiming under him, possession shall have remained for the space of five years, without demand made and pursued by due process of law, on the part of the pretended lender, &c., &c., the same shall be taken, as to all creditors and purchasers of the person so remaining in possession, to be void, and that the absolute property is with the possession, unless such loan, reservation or limitation of use or property, was declared by will or deed in writing, proved or acknowledged and recorded, as required by the preceding section." Now this statute is invoked here, to embrace the possession of this negro woman, whilst with James Carter, in the state of Tennessee. This court is of the opinion, that this statute has no such extra-territorial force; that it can not be made to cover and embrace the case of possession of slaves out of this state. In the case of *Finch* v. *Rogers*, 11 Humph. (Tenn.) Rep. 559, the Supreme Court of Tennessee held, that a verbal loan of slaves, made in North Carolina, where the slaves were then situated, but afterwards brought by the bailee to the state of Tennessee, the loan not being

made in reference to the removal of them to Tennessee, was not within the act of 1801, chap. 25, which declares, that verbal loans shall be declared in writing, proved and recorded within five years, or the title shall be with the possession. In this case, the court said: "Did the legislature intend any thing more, than to regulate the right of property, and prescribe a rule for our own citizens? We think not. It is not to be presumed, that the legislature intended to regulate the rights of persons or things, without the limits of its own territory, however indisputable their authority to do so; and it should not be so held, unless the words of the statute clearly import that such was the intention. Such was the exposition of this statute, in the case of *Loving* v. *Hunter*, (8 Yerg. 432,) in which we are disposed to acquiesce; and therefore, we hold, that the act does not apply to a loan of property made in another state or country where the property was at the time situate."

It is not to be supposed, that the legislature of Missouri intended by this act to operate upon the transactions of men in another state, concerning their property in such state. The court below, then, erred in this point in this case.

4. The possession of James Carter cannot be considered adverse to the rights of the plaintiff in this suit; at all events not until he assumed the ownership to himself, and did some act by which strangers or purchasers might take it for granted that he was such owner. The sending of this negro woman to Missouri to his son-in-law, might be considered such an act as would induce purchasers to believe him the real owner; and from that act, adverse possession might begin to be estimated. But then from that act, the time is too short to claim title by adverse possession; it was not for the space of five years. From the facts on the record, James Carter never pretended to be the owner, or to set up any claim in himself, until he supposed his brother, the plaintiff, was dead—then he would be the owner. He supposed his brother dead in 1844, when he sent the negro to Missouri, but in this he was mistaken.

Under these views of the law arising on this case, the court below erred. The instructions given to the jury contrary to this opinion were erroneous—those refused to be given, and which set forth principles in accordance with the views of the court herein expressed, ought to have been given ; it was error to refuse such.

The judgment of the court below is reversed, the other judges concurring, and this case is remanded for further proceedings in accordance with this opinion.