JOHN J. KREHER, Respondent, v. ISAAC M. MASON ET
AL., Appellants.

St. Louis Court of Appeals, April 5, 1887.

1. INDEMNITY BONDS—SHERIFF. — Indemnity bonds must conform
strictly to the statute, and the taking of an indemnity bond by a
sheriff, with one surety only, will not relieve him of liability on his
official bond.

2. —— ILLEGAL LEVY—DAMAGES—EVIDENCE—TRESPASS.—In a suit
against a sheriff for damages, for the taking of the property of the
plaintiff under an attachment against a third person, the sheriff
can not, in mitigation of damages, show a release of the levy with-
out showing, also, that he restored the goods.

3. —— JOINT TRESPASS.—The plaintiff in the attachment, at whose
request the sheriff seized the goods of a stranger to the writ, is a
co-trespasser with the sheriff, and is jointly liable with him for
all damages.

APPEAL from the St. Louis Circuit Court, AMOS M.
THAYER, Judge.

*Affirmed.*

DYER, LEE & ELLIS, for the appellants.

DAVID GOLDSMITH, for the respondent: The in-
demnity bond given in this case is insufficient. *St.
Louis Dairy Co. v. Sauer*, 16 Mo. App. 6 ; *Cochran v.
Goddard*, 27 Mo. 500. However temporary the conver-
sion may have been, it will suffice to render the defend-
ants liable, for a conversion which has once taken place
can not be cured. *Sparks v. Purdy*, 11 Mo. 223 ; *Dun-
can v. Stone*, 45 Vt. 118.

ALEXANDER MARTIN, Special Judge, delivered the
opinion of the court.

This is an action to recover damages for the conver-

sion of twenty barrels of whiskey. It is alleged in the petition that Isaac M. Mason, sheriff of the city of St. Louis, in executing a writ of attachment against the Jacob Ambs Distilling Company, on the twenty-eighth of August, 1884, seized the property in question, under directions from Adam Roth, in whose behalf the writ had been sued out; that eight of the twenty barrels so seized were returned to the plaintiff, and that the remaining twelve were sold and disposed of by said sheriff, to the damage of the plaintiff in the sum of twenty-five hundred dollars.

The defendants, who join in their answer, admit the seizure of the twenty barrels under the writ, and plead that, afterwards, the sheriff returned eight of the barrels so seized, and that they were accepted by the plaintiff.

It is further alleged in the answer that on the same day another writ of attachment against the said Jacob Ambs Distilling Company, and in favor of Mihalovitch, Fletcher & Company, was received by the sheriff, and that, in pursuance of its command, he levied the same upon the said twenty barrels of whiskey, subject, however, to the attachment previously, on the same day, levied on the same property; that, on the same day, but after the levies made in pursuance of the said writs, the plaintiff herein made claim for the said twenty barrels of whiskey, and served notice thereof in writing, as required by section 3, chapter 13, Revised Statutes; that, thereupon, the said sheriff demanded of the said Adam Roth a bond of indemnity, which the said Roth failed to give, and, thereupon, the said sheriff released his levy on the said property, so far as the Roth attachment was concerned; that, at the same time, the said sheriff demanded of the said Mihalovitch, Fletcher & Company a good and sufficient bond of indemnity; that the bond so demanded was, on the twenty-eighth day of August, 1884, given to and approved by the said sheriff, and returned by him into court, as required by law.

The reply consists of a general denial, coupled with an averment that the claim of the plaintiff was made under the levy and proceedings of the Roth attachment, and before any other levy had been made.

It seems to be clear, from the evidence, that the property seized as the property of the Jacob Ambs Distilling Company belonged to the plaintiff. This property, when seized, was not on the premises of the Jacob Ambs Distilling Company, but on the premises of the Sickles Saddlery Company, of which the plaintiff is the president. A watchman was placed in charge of it.

The next day after the seizure the sheriff, upon application to the court, obtained an order, in the Roth attachment case, to sell the whiskey as perishable property. Immediately thereafter, probably two days after the seizure, the sheriff removed the property so seized to the premises of the said Jacob Ambs Distilling Company, presumably for the purpose of making sale thereof, along with the other property seized as the property of the said company, which was held for sale by the sheriff.

When the sale came off, on the tenth of September, 1884, only twelve barrels were sold under the Mihalovitch writ. Immediately after the sale, the plaintiff was notified that the other eight barrels were on the premises of the Jacob Ambs Distilling Company, subject to his order. In pursuance of this notice, the plaintiff accepted them there.

Among the papers returned by the sheriff into court appears the indemnity bond of Mihalovitch, Fletcher & Company to the sheriff, in their attachment suit against the Jacob Ambs Distilling Company, dated August 29, 1884. This bond recites that the sheriff levied the writ of the said Mihalovitch, Fletcher & Company upon the twelve barrels, and that they had been claimed by the plaintiff, in accordance with the act of March 3, 1885, relating to the duties of the sheriff and marshal in

the county of St. Louis. There does not seem to have been any written claim by the plaintiff under the Mihal-ovitch levy. It is probable that the sheriff treated the formal claim of the plaintiff under the Roth attachment as sufficient to justify his demand for a bond under the second attachment.

Upon objection, by the plaintiff, this bond was excluded from evidence, on the ground that it contained only one surety, while the law required two. The bond was open to other objections and criticisms, which need not be considered here.

The sheriff's returns on the two writs also appear in evidence, but, as they are both without date, they fail to furnish evidence of the precise dates of the disputed acts and doings of the sheriff in controversy between the parties thereto. The writ, in the Roth attachment, contains two distinct *memoranda* of return. In one is recited the levy of August 28, 1884, on the twenty barrels. It, also, contains a recital, to the effect that eight out of the twenty had been applied on that attachment. It must be conceded that this is not very apt language to indicate a release of the seizure. Immediately following this memorandum appears another one, also signed by the sheriff, to the effect that the personal property, as above levied upon, had been claimed as per claim herewith filed, and that the plaintiff, having failed to give an indemnifying bond, the levy had been released. The return on the Mihalovitch writ recites a levy, on the twenty-eighth day of August, 1884, upon the twenty barrels, subject to the Roth attachment, among others. It, also, recites that twelve of the twenty barrels, so levied upon, were applied to the attachment, and that bond was given against claim for the same, and that the balance of the personal property, as levied upon, was sold under the previous attachment.

It may be remarked here, that this is not very apt language to indicate a release, under this writ, of the eight barrels, which were returned to the plaintiff.

Upon this evidence, the court trying the case rendered a judgment in favor of the plaintiff, from which the defendants have appealed.

I. The most important question, bearing upon the substantial merits of the case, involves the ruling of the court in excluding from evidence the bond taken by the sheriff under the Mihalovitch writ. The sheriff, being informed by the plaintiff's claim in the Roth attachment that the plaintiff claimed the whole twenty barrels, demanded a bond also from Mihalovitch, and that attaching creditor responded to the demand by furnishing a bond supposed to be sufficient to cover enough of the whiskey to satisfy his debt. But, as the bond was wanting in the requisite number of sureties, it materially failed to comply with the law. On this account, I think, it was properly excluded by the court. This ruling left the defendants without any evidence to support the defence they pleaded, a defence resting solely upon the statute, which purports to relieve the sheriff from all legal responsibility, when he has taken a good and sufficient bond of indemnity from the attaching creditor. Sess. Acts, 1855, p. 465. The claimant's remedies are, thereafter, confined to a suit upon the bond. He may, also, sue the principal and sureties therein for a trespass. *The State to use v. Donnelly*, 9 Mo. App. 519. This exclusion of the bond leaves the case to be considered, in all respects, as if no bond had been given.

II. There seems to be no doubt that the whole twenty barrels were seized by virtue of the Roth attachment. The next question to be considered is, whether the twelve barrels for which damages are claimed, were, in fact or in law, returned to the plaintiff, so as to constitute a mitigation of the trespass and conversion to the extent of their value. It appears, from the evidence, that the whole twenty barrels were seized while in the possession of the plaintiff, and removed beyond his actual dominion and control. There is no evidence in

the case of any actual return of these twelve barrels to his manual possession, or to his control of any kind whatever. But it is claimed, by the defendants, that the sheriff released the Roth levy as to these twelve barrels, and that this release operated in law as a restoration to the plaintiff of this property, for which damages are claimed. In order to have the benefits attributed by the defendants to a simple release, it ought to appear that it was made as soon as Roth refused to furnish a bond, if he so refused, and at all events as soon as he failed to furnish one, after a reasonable time had elapsed for him to so furnish it. But on this point the evidence rather makes against the defendants. For, while the property was seized on the twenty-eighth day of August, and the plaintiff's claim was made on the same day, and Mihalovitch came forward with an insufficient bond on the next day, which was accepted, there is no evidence that these twenty barrels were released from the Roth levy before the tenth day of September, an obviously unreasonable length of time to hold such a moderate amount of property for the purpose of permitting an attaching creditor to hunt up an indemnity bond. Besides, there is no evidence that any time was requested or given for that purpose. Evidence of this character, if any existed, was manifestly under the control of the defendants, and their failure to furnish it, leaves them without any favoring presumptions.

Under these circumstances, I am satisfied that this court, when the case was before it on a former appeal, was right in holding that the release, of itself, did not, and could not, operate as a restoration of the property to the owner, from whose possession it had been taken. In the opinion of the learned judge of the circuit court, on the occasion of the first trial, which is cited in the brief of the defendants, is the following declaration, to which attention has been called by counsel for the defendants : " The legal effect of the release was to restore the prop-

erty to the plaintiff. It matters not, in my judgment, that an intervening attachment operated to prevent the property, when released, from coming to the manual possession of the plaintiff." I am unable to accede to this view of the case. It seems to me, that the only thing the sheriff deprived the plaintiff of, was the possession of his property. To that extent, it may be said, he inflicted an injury to his legal right of property. Not without the consent of the plaintiff could his act operate as a divestiture of the plaintiff's right of property. The sheriff's release, therefore, could not operate to restore the right of property, for that had never been taken. Unless it operated to restore the manual possession, it effected nothing. Certainly no manual possession was restored, because the sheriff assumed to retain that possession by virtue of another writ. I should add here, that if the sheriff, after the release, had placed the property at the actual disposal of the plaintiff, so that nothing whatever could prevent him from resuming actual manual possession thereof, the release, and its attendant notice, might well be accepted as equivalent to an actual restoration of possession. But such is not the case before us. The release is devoid of any actual return of the property to the possession of the plaintiff or of any acts of surrender, which can be accepted as equivalent to such return. It was neither given back to the plaintiff, nor placed where he could go and take it.

Under these facts, appearing in the record, I am unable to discern a legal return of the twelve barrels theretofore taken by the sheriff. Neither do I perceive any substantial or ultimate justice to be advanced by holding that there was such a return in this case. It would result in holding that there was a second taking from the plaintiff, by virtue of the Mihalovitch attachment. Manifestly, that taking was equally wrongful with the taking and trespass complained of under the Roth attachment. The only excuse which the defendants could interpose

in its behalf would be a barren and technical one, to the effect that the plaintiff had not described such trespass, or conversion, in his petition, and for that reason, ought not to recover for it.

I am not at all inclined to substitute a constructive return of the property to the plaintiff for an actual one, in order to create two actual takings, and thereby advance such illusive justice as this. Especially am I confirmed in this conclusion.when I reflect that the plaintiff never recognized two takings by any claim or act of his.

III. The judgment, in this case, is against Roth, as well as the sheriff. In behalf of Roth, it is argued that, as soon as the plaintiff made claim for the property, he yielded to the claim, and, in so far as he was concerned, released the attachment, and, therefore, should not be responsible for what happened afterwards, in the sheriff failing or refusing to return the property. It may be remarked. here that this position reflects somewhat upon the pretended right of .the sheriff to hold the property, under the Roth attachment, after claim made by the plaintiff, in order to afford Roth an opportunity to furnish a bond. But, independent of this criticism, the point merits serious consideration.

Under a writ of attachment, the sheriff is commanded to seize the property of the defendant in the writ. If the plaintiff does not direct him to seize any particular property, his seizure is his own act, and the plaintiff is not responsible therefor, unless he knowingly makes himself a party thereto by acts of ratification. In this case, Mr. Roth made himself a joint trespasser with the sheriff, by directing him to seize property which did not belong to the defendant in the writ, but which belonged to the plaintiff herein, and which was, at the time of the seizure, in his possession. It may be that Mr. Roth repented of the trespass, as soon as he was advised of the plaintiff's ownership, and that he did everything in his power to return the property and mitigate the damages

of the taking. His efforts in that behalf, however, did not result in any return or mitigation, so far as the property sued for is concerned. It was his misfortune that he could not restore, or compel a restoration of, the property thus seized. The sheriff did as he pleased, after seizure was made. This unfortunate result may happen in almost any trespass upon, or conversion of, property by joint trespassers. The one who instigates or promotes the trespass may, or may not, be able to control the actions of his partner in the wrong. The law makes no allowance for the accidental relationship between joint wrong-doers, or the degree of power which one of them may have over the other, as long as they are both *sui juris*. One may run off with the spoils and appropriate the proceeds thereof to his own exclusive use. But this does not relieve the other from legal liability for the original taking. Whatever happens after the wrongful conversion of property, happens to the wrong-doer, and not to the rightful owner, unless he so elects. *Carter v. Feland*, 17 Mo. 383.

It is, perhaps, unnecessary for me to add, in this connection, that, if the proceeds of converted property should be appropriated to the use of the owner, with his assent, or by process of law, the fact of such appropriation or receipt is always admissible in mitigation of damages. Their appropriation to any other one's use does not have this effect. Such is the case at bar. Mr. Roth, as joint tort-feasor, voluntarily subjected the property he had taken from the plaintiff to the behest of the Mihalovitch writ. He was not compelled by law to do this, as Mihalovitch furnished no bond to justify him. The fact that he was simply instigated to do it, by Mihalovitch, constitutes no excuse or defence to his act.

In pursuance of the foregoing views, it only remains for us to affirm the judgment, and it is so ordered, Lewis, P. J., and Thompson, J., concurring; Rombauer, J., taking no part in the decision, having been of counsel in the case.