The original complaint in this action, which Was brought to restrain the corporation from making a grant of a railroad to be laid in Broadway, is set forth at large in the report of the proceedings on an attachment against the members of the Common Council. (1 Duer, p, 450, 464.) It was subsequently amended by making Jacob Sharpe and his associates—the grantees of the corporation—parties defendants.
The cause was fried upon the amended pleadings before Mr, Justice Duke, in June, 1853; the examination of witnesses, and the arguments of counsel, occupying the whole of that special term. The judge, in July, directed the question, whether the presence of the attorney-general, as a prosecuting party, was not necessary, to be re-argued. It was re-argued accordingly at the beginning of this term by Mr. Van Burén for the plaintiffs, and Mr. Flanagan for the defendants, and now, October 28, after stating at length the proceedings that had taken place before him, the judge said, that he was prepared, and should proceed to announce his decision on the question, which he had directed to be re-argued—namely, whether the action could be maintained by the plaintiffs alone, without the aid of the attorney-general as a prosecuting party, should the court be of opinion that the evidence was not sufficient to prove that the contemplated road would be a public nuisance, from which the plaintiffs, as owners of property on Broadway, or otherwise, would sustain a special injury. The objection, that the attorney-general was a necessary party, was first and very distinctly raised, on the argument of the motion for an attachment; and the only reply then given to it, was, that the complaint alleged, not only that the railroad, if established, would be a public nuisance, but that, as such, it would work a special injury to the plaintiffs. The reply was deemed satisfactory by himself, and by the judges who then assisted him; hut Mr. Justice Bosworth, in the advisory opinion, which he then gave, plainly intimated his conviction that it was only upon the ground of a public nuisance, producing a special injury, that the plaintiffs *665 could be entitled, as individuals, to maintain the action. He (Judge Duer) had not then deemed it necessary to express any opinion upon the question, nor was he then satisfied in his own mind as to the course it might be proper to pursue ; indeed, he Was, at that time, inclined to think that, setting aside wholly the charges of a public and private nuisance, there were other grounds, stated in the complaint, upon which the plaintiffs, as tax-payers, whose private interests, as such, would be affected by the wrongful acts imputed to the defendants, might justly, and in their own names, demand the relief which they claimed. If the charge of a breach of trust should be proved, it then seemed to him, that the plaintiffs, as oestuis que trust, would be entitled to relief. Had he been satisfied by the evidence given on the trial before him, that the contemplated railroad would be a nuisance, specially injurious to the plaintiffs, without examining any other question in the cause, he would not have hesitated, upon that ground alone, to have decreed a perpetual injunction, but as the evidence, from the conflict in the testimony of witnesses, having equal claims upon his belief, had failed to produce that full conviction upon his mind, which could alone have justified him in making such a decree, he had found it necessary to consider whether the attorney-general, as had been intimated by Judge Bosworth, was not a necessary party to the further prosecution of the suit—in other words, Whether, without his intervention or presence, a final judgment could rightfully be pronounced. As this question had not, in his opinion, been fully argued, and he had found it, upon consideration, far more doubtful than he had originally supposed, he had directed it to be re-argued, and since the argument, with an anxious desire to arrive at a satisfactory result, had examined it with all the care and attention of which he was capable.
It had been said, however, that in the present stage of the cause, he had no right to consider the question at all; that the objection from the want of parties was now too late, and whatever judgment might be given, could never be alleged to impeach its Validity. He thought otherwise. In his opinion it was not merely his right, but his duty to consider the question. It was true that under the provisions of the Code, the, objection of the want of parties, if not taken by demurrer or answer— *666 and it was not so taken in the proceedings before him—was deemed to be waived, (Code, § 98, 144, 147, 148.) But there were many cases in which the defect of parties, although not insisted on by the defendant, could not justly be disregarded by the court, and it was to meet such Cases that the Code provided (§ 122) that “ where a Complete determination of the controversy cannot be had without the presence of other parties, the court rrmst cause them to be brought in.” If, therefore, in his judgment, there could not be a complete determination of the present controversy, without the intervention of the attorney-general—as a judge, he had no discretion. The Code imposed a positive duty. He must cause the attorney-general to be-brought in.
If the determination of the question, whether the attorney-general was a necessary party, rested only on the decisions in England, it seemed to him that it was free from difficulty. In all the cases in the English books, in which the act of a municipal corporation is sought to be restrained, or annulled, as a violation of its charter, a breach of trust, or an excess of power, the attorney-general is found to be a party, either prosecuting alone, or in conjunction with, or Upon the relation of, individual corporators. He had not been referred to, nor had he been able to discover, a single case that could be construed as an exception ; not a single case, in which such an action, resting alone upon the grounds he had stated, had been prosecuted by individuals, in their own right and in their own name. If, therefore, the existing and uniform practice in England was to be received as evidence of a legal necessity,.he saw no escape from the' conclusion, that from the nature of the present controversy, the presence of the attorney-general was necessary to its complete determination. He had, indeed, doubted, for a time, whether the English decisions could be relied on as applicable. The powers of the attorney-general in England were derived from the • common law, and he was unwilling to say that any such powers belonged to the attorney-general of this state; he was unwilling to say that the latter possessed any powers beyond those which either expressly, or by a necessary implication, are given to him by statute. But an examination of the revised statute, which defines the powers and duties of the *667 attorney-general, had removed the difficulty. By the rule of the common law, the attorney-general is a necessary party in all suits in which the crown is interested, and by the first section of our statute (1 B. S. 1Y9) it is made the duty of the attorney-general to “ prosecute and defend all actions, in the event of which the people of the state shall be interested,” in other Words, in all such actions, he is made a necessary party. In. England, a corporate act affecting injuriously a whole community, is deemed a public wrong, which, as such, the sovereign is bound to redress, and it is for this reason that in all suits in Which this redress is sought, the crown is held to be interested, The doctrine and the reasoning, it seemed to him, were just as applicable here, where fortunately the sovereignty resides, not in an individual, but in the people ; nor could he doubt that the people, as the sovereign power, ought to be considered as interested in the event of every suit in which the illegal act, which is sought to be restrained or annulled, may, from its nature, be justly treated as a public wrong. The English decisions, therefore, in his opinion, were not only proper to be consulted, but, unless it could be shown that they had been contradicted and overruled in our own courts, he held himself bound to follow them.
The judge then remarked, that the English cases went much further than he had before stated; they not merely proved that it was an invariable usage to make the attorney-general a party in suits like the present, but the grounds of the usage were explained; and he was expressly held to be a necessary party. He felt that the examination which he had given to these cases justified him in saying, that the general rule to be extracted from them was this—that when the act of a municipal corporation, which is the subject of complaint, affects injuriously the public at large—that is, the entire community over which the corporate jurisdiction extends—the attorney-general is a necessary party to the prosecution of the suit; and that it is only where the act, which, in this sense, is a public injury, is also productive of a special injury to particular individuals, that the action can be maintained in their names. If this was the true rule, it was manifest, and had not been denied, that it bore with a decisive application on the case before him, since, reject *668 ing the charge of a special injury,, resulting from a public nuisance, the grounds upon which the grant of the railroad was impeached—-namely, excess of power, and breach of trust, were those, which every inhabitant of the city, and certainly every tax-paying inhabitant, had the same right to make the foundation of a suit as the actual plaintiffs. Setting aside the nuisance, if the grant, upon the grounds alleged, was illegal and void, the making it was a public injury, affecting not the plaintiffs alone, nor specially, but the entire community of which. (they are members. Eor the purpose of showing that he waa not mistaken in the import of the decisions, and that the rule which he had stated was constantly applied when a breach of trust in the misapplication of corporate property was charged, he would -refer to a few of the cases which it had been his duty to examine.
The judge then cited and commented upon the cases below 5 The Attorney-General v. Forbes, 2 Mylne & Craig, 129; Same v. Aspinwall, 1 Keene, 153 S. C.; 2 Mylne & Craig, 613; Same v. Corporation of Poole, 2 Keene, 190; S. C. 4; M. & C. 17; Same v. Wilson, 9 Simons, 30, in which the Vice-Chancellor said, “ where the object is to restrain the application of corporate property to any other than the public purposes to which it ought to be applied, the attorney-general is a necessary party.’* (Attorney-General v. Corporation of Liverpool, 1 M. & C. 171; Same v. Corporation of Norwich, 16 Sim. 228; Same v. Corporation of Litchfield, 13 Simons, 547; Same v. Mayor of Dublin, 2 Bligh N. R. 312; Spencer v. London and Birmingham R. R. Co., 8 Simons, 193; and Sampson v. Smith, 8 Simons, 373.)
When he had finished this review of the cases, the judge proceeded to say that the rule, which they plainly declared, or necessarily implied, was not to be regarded as technical and arbitrary. It had a solid foundation of principle, and was sustained by Very sound reasons of public policy. The object of the rule was to protect a corporation against a multiplicity of suits, and to secure, in that which is commenced, a final determination of all the controverted questions which it involved. When the suit is brought by the attorney-general, no other, involving the same questions, can be instituted; and when a judgment is pronounced in such a suit, as the attorney-general *669 represents the public—the public, that is, all persons, are bound by the decision, (Sampson v. Smith, 8 Sim. 273.) But if individuals could maintain a suit for a general and public wrong, as many separate suits might be brought as there were members of the community, whose interests were affected; the pendency of one such suit would be no bar to the commencement of another, and the judgment pronounced would bind not the public, but the parties only. This was illustrated by what had in fact occurred. Three suits in relation to the Broadway railroad, two in the Superior and one in the Supreme Court, involving all nearly the same questions, had already been brought, and were now pending. It was to be remembered that it was not upon the metaphysical being, termed a corporation, nor upon the persons, by whom, for the time, the corporate powers might be exercised, that the heavy multiplied expenses of needless litigation would be certain to fall. They would be borne, in the result, by the corporators themselves, the whole body of citizens, and would form a positive addition to their public burdens Every inhabitant of the city liable to be taxed, had, therefore, a personal interest in the establishment and strict observance of a rule by which useless litigation would not merely be checked, but effectually prevented. It, therefore, seemed to him that the rule which he had deduced from the English cases, was in itself wise and salutary, and he must therefore hold that he was bound to follow it, unless it could be shown that in our courts it had, not merely been casually overlooked, but distinctly and deliberately rejected. The only case to which he had been referred, that with any semblance of reason could be represented as sanctioning an opposite doctrine, was the decision of the Supreme Court in the case of Christopher v. The Mayor of New York (13 Barb. 369), This was a recent and solitary decision, and with the utmost respect for the court in which it was pronounced, he could not regard it as an authority by which he ought to be controlled. It was evident upon the face of the report that the question whether the attorney-general was a necessary party, was by no means fully discussed or considered; nor indeed were the reasons for requiring bis presence adverted to at all. The learned judge who delivered the opinion of the court, referred only to two cases as sustaining his own views *670 (Bromley v. Smith, Sim, 8; Gray v. Chaplin, 2 Simon and Stewart, 267), It was to be observed, however, that in neither of these cases were the defendants a municipal corporation; that in the second, the question whether the attorney-general was a necessary party was not raised at all, and in the first, was decided upon grounds which render it certain that, had the defendants been a corporation, his presence would have been required. He could not say, therefore, that this decision had altered or weakened his own deliberate conviction, that the attorney-general was a necessary party to the further prosecution of the suit before him—so necessary that without his presence the controversy could not he “ completely determined,”
He should therefore allow ten days to the plaintiffs to make their election whether they would bring in the attorney-general as a prosecuting party, or have an issue ordered for the determination by a jury of the question of public nuisance and special injury.
The plaintiffs elected to bring in the attorney-general,*

 This decision was in effect affirmed at the -1t"™" 5p January. 1864.