Butler v. Lawson.

## BUTLER et al., Appellants, v. LAWSON.

1. **Motion for Rehearing, when Unnecessary.** A motion for rehearing is not necessary to enable the Supreme Court to review the action of the trial court in sustaining a motion to exclude the plaintiff's evidence and dismiss the suit on the ground that the petition does not state facts sufficient to constitute a cause of action.

2. **Probate Courts have no Equitable Jurisdiction.** The probate court has no jurisdiction of matters of purely equitable cognizance connected with the administration of estates. Hence, when the object of a suit is to follow a trust fund through many transformations during a long series of years, the circuit court is the proper forum, though the delinquent trustee be dead and his estate in the hands of an administrator.

3. **Defect of Parties:** PRACTICE: AMENDMENT. A suit should not be dismissed for defect of parties. Section 3568, Revised Statutes, makes it the duty of the court when such defect is ascertained to exist, to order the necessary parties to be brought in either by an amendment of the petition, or by a supplemental petition and new summons.

4. ———: ———: PLEADING. The objection of defect of parties can be taken by demurrer or answer only, (R. S., § 3519,) not by motion to dismiss.

5. **Parties:** TRUSTS: PRACTICE: ADMINISTRATION. Where a misappropriated trust fund consists in part of personal property, both the administrator and the heirs of a deceased beneficiary are necessary and proper parties to an action to recover it.

6. ———: ———: ———. Where a misappropriated trust fund consists in part of real and in part of personal property, the heirs and the legal representatives of all the beneficiaries may sue jointly to recover the whole in one action.

7. **Pleading.** A motion to dismiss on the ground that the petition does not state facts sufficient to constitute a cause of action, like a general demurrer, is deemed to confess the truth of the allegations and deny only their legal sufficiency.

8. **Statute of Limitations:** TRUSTS. An action against a delinquent trustee who has left the state of his residence, and come into this State, and here studiously concealed his whereabouts, will not be barred by the lapse of a great length of time, (in this case, forty years,) provided it is commenced within the period limited by statute after his whereabouts became known to the beneficiaries.

9. ———: TRUSTEE'S POSSESSION NOT ADVERSE, UNTIL, ETC. Where a trustee purchases property with trust funds, though in his own name, his

72  227
32a 479
33a 114
72  227
99  207
72  227
36a  71
72  227
42a 342
72  227
46a 179
72  227
110 302
111 288
112 485
49a  97
52a 662
72  227
56a 110
72  227
59a 467
72  227
127 164
62a 118
72  227
131  75
72  227
133 194
72  227
73a 565
72  227
147 295
76a 337
72  227
82a 593
72  227
159 624
72  227
94a ²595
72  227
170 ³377

possession will be deemed the possession of the beneficiaries until he does some unequivocal act denying their right; till then the statute of limitations does not begin to run against them.

10. ———: ADMINISTRATION. The statute of limitations does not begin to run against the estate of a deceased person on a cause of action accruing after his death, until an administrator has been appointed.

11. **Laches.** To constitute laches there must be not only delay in the institution of proceedings for relief, but such knowledge of the facts on which the claim to relief is based as renders the delay culpable.

*Appeal from Linn Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

This action was brought by Butler and Henry as administrators of the estates of Mary Tillett, John M. Hall and Nathan Hall, all deceased, against James J. Lawson, administrator of the estate of Spence H. Gregory, deceased, Mildred L. Lawson and her husband, James J. Lawson, Emma Jennings and her husband, James T. Jennings, Robert Gudgel, Spence Gudgel, Julian Gudgel and Elizabeth Gregory, widow of Spence H. Gregory, deceased.

The petition stated that Jehu Hall departed this life intestate, in the county of Currituck, and state of North Carolina, sometime about the year 1813, leaving Lovey Hall, his widow, and three children, issue of his marriage with said Lovey, to-wit: Mary Hall, John M. Hall and Nathan Hall; that at the time of the death of the said Jehu Hall, the said Mary Hall was about three years old, the said John M. Hall was about two years old, and the said Nathan Hall was about one year old; that soon after the death of the said Jehu Hall, his widow, Lovey Hall, was appointed administratrix of his estate by the proper court, having probate jurisdiction within and for the said county of Currituck, in the state of North Carolina; that she qualified, gave bond and entered upon the discharge of her duties as such administratrix, and so continued to act until about the year 1814, when she was married to Spence

H. Gregory; that upon her marriage with the said Gregory, the said Lovey ceased to be administratrix of the estate of the said Jehu Hall, deceased, and thereupon, her husband, Spence H. Gregory, succeeded her in the administration of said estate, as the administrator thereof; that he was duly appointed as such administrator by the proper court having probate jurisdiction, in the said county of Currituck, to-wit: the court of pleas and quarter sessions; that he duly qualified, gave bond and entered upon the discharge of his duties as such administrator; that as such administrator he immediately took in charge and assumed control of all and singular, the personal, chattel, mixed and real property belonging to the estate of Jehu Hall, deceased, and proceeded to administer the same.

That the said estate of Jehu Hall, deceased, was at the time said Gregory became administrator thereof, very valuable, consisting of a large quantity of land, negroes, money, shipping, choses in action, bills, notes, accounts and other personal effects and evidences of debt, and amounting in the aggregate to about the sum of $100,000; that the said Gregory, as administrator aforesaid, proceeded to collect the debts due said estate, sold the real estate and the personal property (except about forty slaves), and converted the same into money; that he held and used said money, with said slaves, up to the year 1833, when he removed with his family to Livingston county, Missouri; that he never filed any inventory of said estate, nor did he ever make any settlement thereof, final or otherwise, in the proper court of probate jurisdiction within and for the said county of Currituck, and state of North Carolina, from the time he became such administrator to the date of his said removal to the State of Missouri.

And plaintiffs further aver the fact to be that the said Gregory, clandestinely, secretly and fraudulently removed the said slaves, as well as the money and other personal property belonging to said estate, including the estates of John M. Hall and Nathan Hall, deceased, out of

the county of Currituck aforesaid, and out of the state of North Carolina, and brought the same to Livingston county, Missouri, in the year 1833; when and where he located, and where he continued to reside from the year 1833, to the time of his death in the month of September, 1871; that the said Gregory, on removing to Missouri, invested a large part of the money so belonging to said estates in lands in the State of Missouri, and held the title thereto in his own name, at the time of his death aforesaid; that the lands of which said Gregory died seized are described as follows, to-wit: (Here follows a description of the tracts.)

That said lands were acquired by said Gregory at cheap rates; a great portion thereof having been purchased by him from the government of the United States, at the price of $1.25 per acre; and that said lands had become very valuable at the time of his death, caused by the increase of population in said counties, the construction of railroads through the same and other causes; that on making the investment in said lands, the said Gregory had still remaining on hand a large amount of money belonging to the said estate of Jehu Hall, John M. Hall and Nathan Hall, deceased, which he loaned and kept loaned out at interest, up to the day of his death aforesaid; that when he died he had, on deposit in the Peoples' Savings Bank, in Chillicothe, the sum of $18,173.57, besides paid up stock in said bank amounting to the sum of $5,000; that in addition thereto he had also a large amount of notes, on good and solvent men and well secured by real estate, amounting in all to the sum of $40,000; besides other personal effects amounting to the further sum of $2,000; that said real estate was, at the time of his death, and is now, reasonably worth and of the value of about $135,000, and all making the value of his entire estate, of which he died seized and possessed, amount to something over the sum of $200,000; that the said slaves so brought by said Gregory to Livingston county, were of the value of $20,000, and by natural increase, labor and hire up to the time of

the abolition of slavery, they contributed largely to swell the value and amount of the estate of said Gregory at the time of his death aforesaid; and all the property aforesaid of which said Gregory died seized was the trust property or proceeds thereof so coming into his hands as aforesaid.

Plaintiffs further state that the said Mary Hall, daughter and heir at law of Jehu Hall, deceased, was married to Isaac Tillett, in Currituck county, North Carolina, sometime in the year 1826, and was at the time of her said marriage only about fifteen years of age—an infant under the age of majority; that the said Mary Tillett continued to reside in said county of Currituck till she departed this life in the year 1837, and that the said Isaac Tillett also continued to reside in said county and state till he died in the year 1850; that there were born of said marriage between Mary Hall and Isaac Tillett three children, to-wit: Mary H. Tillett, Isaac N. Tillett and Durant H. Tillett; that the said Mary H. Tillett was born February 20th, 1829, and was married in Currituck county to Alfred Ramsaur on the 4th day of November, 1861; that said Alfred Ramsaur departed this life in the year 1863, leaving his widow, Mary H. Ramsaur, and an only child, who still survive him; that the said Mary H. Ramsaur has always been, and still is, a resident of the state of North Carolina; that the said Isaac N. Tillett is a resident of the state of North Carolina, and has ever been; that the said Durant H. Tillett was married in said Currituck county, where he continued to reside up to the time of his death, in the year 1867, leaving as his children and heirs at law the following named persons, to-wit: Gideon, Sophia, Samuel and Archie Tillett, who are still minors, and reside in or near the city of Norfolk, in the state of Virginia; that the said Mary Tillett, wife of Isaac Tillett, died intestate, and there was no administration upon her estate in North Carolina until within the —— years; and that said Durant H. Tillett also died intestate; that the said Nathan Hall, son and heir at law of the said Jehu Hall, deceased, departed this life in

Currituck county about the year 1820, aged about eight years; that the said John M. Hall, son and heir at law of the said Jehu Hall, died in said county of Currituck about the year 1817, aged about six years.

Plaintiffs further aver that it was enacted and provided by the governor, council and assembly of the state of North Carolina, by an act entitled "An act appointing the method of distributing intestates' estates," as follows:

"That all and every person and persons to whom administration on estate of any person deceased shall hereafter be granted, shall distribute the surplus of such estate in the manner following, that is to say: One-third part of the said surplus to the wife of the intestate, and all the rest by equal portions to and amongst the children of such persons dying intestate, and such persons as legally represent such children, in case any of the said children be then dead, other than such child or children (not being heirs at law) who shall have an estate by the settlement of the intestate, or shall be advanced by the intestate in his life-time by portion or portions equal to the share which shall by such distribution be allotted to the other children, to whom such distribution is to be made. And in case any child other than the heir at law, who shall have any estate by settlement from the said intestate, or shall be advanced by the said intestate in his life-time, by portions not equal to the share which shall be due to the other children by such distribution as aforesaid, then so much of the surplus of the estate of such intestate to be distributed to such child or children as shall have any land by settlement from the intestate, or were advanced in the life-time of the intestate, as shall make the estate of all the children to be equal, as near as can be estimated; but the heir at law, notwithstanding any land that he shall have, by descent or otherwise, from the intestate, is to have an equal part in the distribution with the rest of the children, without any consideration of the value of the land which he hath by descent or otherwise from the intestate; and in case there should be no

children nor any legal representatives of theirs, then one moiety of the said estate to be allotted to the wife of the intestate; the residue of the said estate to be distributed equally to every of the next of kin of the intestate who are in equal degree and to those who legally represent them; *Provided*, That there be no representatives admitted amongst collaterals after brother's and sister's children. And in case there be no wife, then all the said estate to be distributed equally to and amongst the children; and in case there be. no child, then to the rest of kindred in equal degree of or unto the intestate and their legal representatives as aforesaid, and in no other manner whatsoever. And if after the death of the father, any of his children shall die intestate, without wife or children, in the life-time of the mother, every brother and sister and the representative of them, shall have an equal share, with the mother, of the estate of the child or children so dying intestate."

Plaintiffs allege that the act last aforesaid was in full force and effect at the time said Spence H. Gregory became administrator of the said estate of Jehu Hall, deceased, and long prior thereto, and so continued in full force and effect and was the law of the state of North Carolina up to the time when he (the said Spence H. Gregory) removed from the said county of Currituck to Livingston county, Missouri; that by virtue of the provisions of said act, the interest or share of John M. Hall in and to the estate of his deceased father, Jehu Hall, did, upon the death of the said John M., vest in and descend to his. mother, Lovey Gregory, wife of the said Spence H. Gregory, to his sister Mary Hall, and his brother, Nathan Hall, in equal proportions, but subject to administration and the payment of debts; that upon the death of Nathan Hall as aforesaid, and by virtue of the provisions of said act, his interest or share in the estate of the said Jehu Hall, deceased, vested in and descended to his mother, Lovey Gregory, and his sister, Mary Hall, in equal parts, and his interest or share in the estate of his deceased brother, John M., likewise.

passed and descended to his mother and sister aforesaid, in equal shares or parts, subject, however, to administration and the payment of debts.

Plaintiffs further state that upon the death of the said Jehu Hall, his widow, Lovey Hall, was entitled to a dower interest in the real estate of her deceased husband, and of which he died seized, and that said dower interest was an undivided third part of said real estate for and during the term of her natural life, and that she became and was entitled to a child's part or share in his personal and chattel property—the said share (as there were three children) being one-fourth of said personal and chattel estate; that said Spence H. Gregory, as the husband of the said Lovey, and as administrator aforesaid, became and was the owner of all the personal and chattel property belonging to his said wife, and by her derived from the estate of the said Jehu Hall, deceased; that said Gregory also became entitled, in right of his said wife, and as administrator aforesaid, upon the death of the said John M. Hall, to one-third of his interest in his said father's estate; and upon the death of the said Nathan Hall, to one-half of his interest in his said father's estate, subject to administration and the payment of debts.

Plaintiffs, therefore, say that said Gregory became and was entitled, in right of his said wife, to one-half of the personal and chattel estate of the said Jehu Hall, deceased, at the time he (said Gregory) removed to Missouri in 1833, and that the other half thereof was, at the year last aforesaid, the property of and rightfully belonged to Mary Tillett, wife of Isaac Tillett, aforesaid.

Plaintiffs further aver, that on or about the 25th day of February, 1817, the said Gregory was duly appointed, by the court of pleas and quarter sessions in and for Currituck county, North Carolina, (a court then and there having probate jurisdiction,) administrator of the estate of the said John M. Hall, deceased, and on the 29th day of November, 1820, the said Gregory was also appointed by

the court last aforesaid, administrator of the estate of the said Nathan Hall, deceased ; that said Gregory, as administrator of each of the two estates last aforesaid, qualified, gave bond and entered upon the discharge of his duties as such administrator; that as administrator of the said estates of Jehu Hall, John M. Hall and Nathan Hall, deceased, the said Gregory had the charge and control of and reduced to possession all property, of every kind and description, belonging to said estates, and with the exception of the slaves brought by said Gregory to Missouri, as herein alleged, converted said property into money, prior to his removal from North Carolina in 1833, as aforesaid.

Plaintiffs further allege, that upon the death of the said Mary Tillett, in 1837, and of her husband, in 1850, the said one-half interest in the estate of Jehu Hall, deceased, passed to and vested (subject to administration) in their said children, to-wit: Mary H. Tillett, (now Mary H. Ramsaur,) Isaac N. Tillett and Durant H. Tillett, in equal parts, and that upon the death of Durant H. Tillett, intestate, his one-third interest in said one-half of the personal and chattel estate of said Jehu Hall, deceased, descended, subject to administration, to his said four children, to-wit: Gideon, Sophia, Samuel and Archie, minors as aforesaid.

Plaintiffs further state, that at the time of the removal of the said Gregory from North Carolina to Missouri in 1833, the amount of assets then in his hands aforesaid, and as the administrator of the estate of Jehu Hall, deceased, and including the estates of John M. and Nathan Hall, deceased, after the payment of debts, was the sum and of the value of $80,000, and that the said Mary Tillett was then entitled to the sum of $40,000 thereof as her share in the estate of her deceased father, including the estates of her two deceased brothers, John M. and Nathan Hall.

Plaintiffs charge that said Gregory never did, after his removal to Missouri, nor previous thereto, make any settlement, final or otherwise, as administrator of either of the said estates of Jehu Hall, John M. Hall or Nathan

Hall,deceased, nor did he ever account for, in any way, or pay to the said Mary Tillett, during her life-time, or to her said husband during his life-time, or to any one else for them or either of them, the said sum of $40,000, and the interest due thereon, or any part of either, nor did said Gregory, after his removal to Missouri, or previously thereto, account for or pay to the said children and heirs at law of Mary Tillett, deceased, or any of them, or to any person or persons thereunto duly authorized to receive the same, the said sum of $40,000, and the interest due thereon, or any part of said sum or of the interest thereon.

Plaintiffs further state that said Gregory, as the administrator of the estate of Jehu Hall, and of the estates of the said John M. and Nathan Hall, deceased, was and thereby became the trustee of a direct or express trust with respect to the interest of the said Mary Tillett and her descendants, in and to the surplus of the said estate of Jehu Hall, deceased, and the said estates of John M. and Nathan Hall, deceased, after the payment of debts, and so in charge and under the control of said Gregory, as administrator of said estates.

Plaintiffs aver the fact to be that said Gregory never did, in his life-time, disavow or deny said trust or his liability arising therefrom, nor communicate any disavowal or denial thereof to the said Mary Tillett, or to her husband, Isaac Tillett, or to their children or descendants, or any of them. But on the contrary thereof, these plaintiffs allege and charge the fact to be, that Gregory did, at divers times and in divers ways, recognize and acknowledge the binding validity of said trust in favor of the said Mary Tillett and her children and heirs at law aforesaid. That pending and just prior to the removal of said Gregory from North Carolina, his said wife Lovey was opposed to said removal, and did not and would not consent thereto, until she obtained from said Gregory, her husband, a promise and agreement to the effect that he would judiciously take care of and invest the said interest of her daughter, Mary

Tillett, (then amounting to $40,000,) in good lands in the tract where he proposed removing, and in consequence of said promise and agreement on the part of said Spence H. Gregory, the said Lovey withdrew her opposition to said removal and consented thereto, fully relying on her said husband that he would carry out in good faith his said promise and agreement.

And plaintiffs further aver that said Gregory, administrator and trustee as aforesaid, wholly disregarded his said promise and agreement, and failed, and continued to fail to make said investment in the State of Missouri or elsewhere for the benefit of Mary Tillett, or for her children aforesaid, or any of them, up to the year 1847, when his wife, the said Lovey, departed this life. And plaintiffs further allege, that the said Lovey Gregory, during her last illness and extending over a period of one year or more, again requested her said husband, the said Spence H. Gregory, to make an investment in lands in Livingston county, Missouri, or some other provision for the use and benefit of the children of her deceased daughter, Mary Tillett, and that said Gregory did thereupon promise to his dying wife that he would comply with her request. But plaintiffs say that said Gregory wholly disregarded his said promise and undertaking, as he had previously done, and ever afterward failed and neglected to comply with his wife's said request and his duty in the premises, as the administrator and trustee as aforesaid.

Plaintiffs further allege that said Gregory, on clandestinely and secretly removing from the state of North Carolina as aforesaid, caused the impression to be made that he intended to locate somewhere in the state of Tennessee, but instead of doing so, removed to Livingston county, Missouri, and settled in an obscure place and in a region then very sparsely populated ; that said Gregory studiously, carefully and purposely kept the place of his residence concealed from the parties in interest (who lived in Currituck county, North Carolina), up to within two years prior

to his death, and that the said concealment was intended and designed by said Gregory to prevent said parties in interest, to-wit: said Mary Tillett in her life-time, and her children after her death, from instituting the proper proceedings against him in Missouri to compel him to disgorge to them their just and proper share of the funds and assets in his hands, as administrator and trustee aforesaid, and which had been by him so long unjustly and fraudulently withheld from them; that said Gregory was informed by letter written in behalf of the said children and heirs of Mary Tillett, deceased, and received by said Gregory a few days before his death, that said heirs would cause suit to be brought against him immediately for their share in the estate of the said Jehu Hall, deceased, including the estates of John M. and Nathan Hall, deceased, unless he should arrange and settle the same at once.

Plaintiffs further allege, that in consequence of the removal of the said Gregory from North Carolina to Missouri, and his studied and careful concealment of the place of his residence in Livingston county, Missouri, from the said Mary Tillett and her said children—said concealment continuing from the year 1833 up to within two years prior to the death of said Gregory—and in consequence of the fact of the long continued disability of the said Mary Tillett, and her said children, who were infants of very tender years when said Gregory removed to Missouri as aforesaid, as well as the long period intervening between that time and the period when said heirs respectively arrived at the age of majority, said children and heirs of Mary Tillett, deceased, were and continued to be wholly ignorant of their rights in the premises, and of the gross breach of trust perpetrated against them by said Gregory, in concealing and appropriating to his own use their share of the assets derived from the said estates of Jehu, John M. and Nathan Hall, deceased; that said ignorance on the part of said children and heirs of Mary Tillett, deceased, and said con-

cealment on the part of said Gregory continued up to within two years prior to the institution of this suit.

Plaintiffs further state that said Gregory died intestate, and that defendant, James J. Lawson, was, in September, 1871, appointed administrator of his estate by the probate court of Livingston county, Missouri; that said court then and there duly issued and delivered to said Lawson letters of administration upon said estate ; that said Lawson duly qualified and gave bond, and entered upon the discharge of his duties as such administrator, and has ever since been and still is acting as the administrator of the estate of the said Gregory, deceased ; that said Lawson, as such administrator, has taken in charge the said estate, and has already distributed among the widow and heirs at law of said Gregory, deceased, and defendants herein, a considerable part of the personal assets of said estate, without being authorized by law or any order of the said probate court directing him or authorizing him so to do.

Plaintiffs state that there was born of the marriage between said Spence H. Gregory and Lovey Hall one daughter named Lovey Gregory, who was married to John T. Gudgel, in Livingston county, Missouri, about the year 1842; that there were born of the marriage last aforesaid, the defendants, to-wit : Robert Gudgel, Spence Gudgel, Julian Gudgel, Mildred L. Gudgel, now the wife of defendant James J. Lawson, and Emma Gudgel, now the wife of defendant James T. Jennings, and all of whom are made defendants in this cause ; that after the death of Lovey Gregory, the said Spence H. Gregory was married to Elizabeth McCoskrie, about the year 1850; that said Elizabeth, widow of said Gregory, is still living and is also made a defendant herein ; that there was no issue of the marriage last aforesaid; that defendants Robert Gudgel, Spence Gudgel, Julian Gudgel, Mildred L. Lawson, wife of defendant James J. Lawson, and Emma Jennings, wife of defendant James T. Jennings, are the only heirs at law of the said Spence H. Gregory, and to whom descend by ope-

ration of law the real estate aforesaid, together with the personal assets belonging to said estate, subject to the payment of debts and the widow's dower.

Plaintiffs further state that on the 12th day of April, 1872, letters of administration were duly issued and delivered to them by the probate court, within and for Livingston county, in the State of Missouri, upon each of the estates respectively of Mary Tillett, John M. Hall and Nathan Hall, deceased, as aforesaid—that they duly qualified and gave the necessary bonds in each of said estates, which bonds were severally duly approved by said probate court, and that they thereupon entered upon the discharge of their duties and are still acting as such administrators.

Whereupon, by reason of all the premises aforesaid, plaintiffs say they have a just and subsisting cause of action against the defendants herein, and are entitled to have a decree of this court, ascertaining and declaring their rights to the premises; that said Gregory was, at the time of his death, justly and equitably chargeable in favor of the said children and heirs at law of Mary Tillett, deceased, with the said sum of $40,000 and interest thereon at the rate of six per cent per annum from the year 1833 to the year 1871.

Plaintiffs, therefore, pray the court to make its decree, ascertaining and declaring the rights of the plaintiffs in and to the estate of the said Spence H. Gregory, deceased, and against the defendants herein—that the defendants be compelled to account to plaintiffs for the sum of $131,200, and to pay over the same to plaintiffs out of the real and personal estate of the said Gregory, deceased, and that such other and further relief in the premises be given, as justice, equity and good conscience shall require.

Defendant Lawson demurred to this petition on the ground that he was not a proper party to the suit, and the court sustained the demurrer. The other defendants answered. At the trial they objected to the introduction of any evidence in support of the petition on the ground that it

did not state facts sufficient to constitute a cause of action, that there were not proper parties plaintiff, that the administrator of Gregory's estate was a necessary party if plaintiffs claimed a demand against his estate, and if plaintiffs' action was to enforce a trust against the realty, then the heirs of Tillett were necessary parties plaintiff. The court sustained these objections and dismissed the petition.

*L. T. Collier* for appellants.

1. The plaintiffs were proper parties to bring this suit. *Salmons v. Davis*, 29 Mo. 178; *Smith v. Denny*, 37 Mo. 23; *Gillet v. Camp*, 19 Mo. 404; *Rubey v. Barnett*, 12 Mo. 8; *Naylor v. Moffatt*, 29 Mo. 128; *Cheely v. Wells*, 33 Mo. 108; *Leakey v. Maupin*, 10 Mo. 373; *Hanenkamp v. Borgmier*, 32 Mo. 571; *Brueggeman v. Jurgensen*, 24 Mo. 88.

2. By filing answer, the defendants waived their objection as to defect of parties. *Ruegger v. Lindenberger*, 53 Mo. 364; *Horstkotte v. Menier*, 50 Mo. 158; *Miss. Plan. Mill Co. v. Presb. Church*, 54 Mo. 520; *Rickey v. Tenbroeck*, 63 Mo. 570; *Kellogg v. Malin*, 62 Mo. 430; 68 Mo. 457; 55 Mo. 500.

3. If there were other persons necessary to a determination of the suit, it was the duty of the court to retain the bill and to order that they be made parties, plaintiff or defendant. *Hayden v. Marmaduke*, 19 Mo. 403; 2 Story's Eq. Jur., § 1526; Adams Eq., 343.

4. The bill is not multifarious. *Clark v. Cov. Mut. L. Ins. Co.*, 52 Mo. 275; Adams' Eq., (4 Ed.) 652, note 1; *Oliver v. Piatt*, 3 How. 333, 411; *Gaines v. Chew*, 2 How. 619; *Boyd v. Hoyt*, 5 Paige 65; *Swift v. Eckford*, 6 Paige 29; *Curtis v. Tyler*, 9 Paige 432; *Dimmick v. Bixby*, 20 Pick. 368; *Brinkerhoff v. Brown*, 6 Johns. Ch. 149; *Fellows v. Fellows*, 4 Cowen 682; *Martin v. Martin*, 13 Mo. 49.

5. Gregory, as administrator of Jehu Hall, was the trustee of a direct trust, and neither he nor his representa-

16—72

tives can hold the estate to the exclusion of the parties beneficially entitled.   Angell on Limitations, § 168.

6.   Plaintiffs claim is not barred by the statute of limitations or lapse of time.   The statute did not commence to run (if at all) so long as Gregory admitted the trust, or until he repudiated or disowned the same and his possession became adverse.   That he never disavowed or denied the trust or his liability arising therefrom, or communicated any disavowal or denial thereof to Mary Tillett or her children or descendants, but that he did at divers times and in divers ways, recognize and acknowledge the binding validity of said trust in favor of said parties in interest, is all fully set out and charged in the petition.   *McNair v. Dodge*, 7 Mo. 404; ———— *v. Freer* 8 Wall. 202; *Prevost v. Gratz*, 6 Wheat. 481; *Polk v. Allen*, 19 Mo. 467; *Murray v. East India Co.*, 5 Barn. & Ald. 204; *Hobart v. Conn. Turn. Co.*, 15 Conn. 145; *Fishwick v. Sewell*, 4 Harr. & J. 393; *Witt v. Elmore*, 2 Bailey 595; *King v. Aughtry*, 3 Strobh. Eq. 149; *Bucklin v. Ford*, 5 Barb. 393; *Baker v. Morris*, 10 Leigh 284; *Falls v. Torrance*, 4 Hawks (N. C.) 412; *Bird v. Graham*, 1 Ired. Ch. 196; *Pinson v. Ivey*, 1 Yerger 296; *Willison v. Watkins*, 3 Peters 52; *Michoud v. Girod*, 4 How. 503; *Elmendorf v. Taylor*, 10 Wheat. 168; *Piatt v. Vattier*, 9 Pet. 405; *Boone v. Chiles*, 10 Pet. 177; *Wagner v. Baird*, 7 How. 234; 3 Johns. Ch. 215; *Decouche v. Savetier*, 3 Johns. Ch. 190; *Turner v. Debell*, 2 A. K. Marshall (Ky.) 384; 2 Marshall (Ky.) 445; *Kane v. Bloodgood*, 7 Johns. Ch. 90; Hill on Trustees, 263; *Denston v. Morris*, 2 Edwards Ch. 45; *Robinson v. Hook*, 4 Mason 151; *Coster v. Murray*, 5 Johns. Ch. 531; *Goodrich v. Pendleton*, 3 John. Ch. 384; *Thomas v. White*, 3 Littell 177; 4 Munford 222; Adams' Eq., 208, star page 62; *McDowl v. Charles*, 6 Johns. Ch. 132; *Van Hook v. Whitlock*, 2 Edwards 303; *Baker v. Whiting*, 3 Sum. 486.

7.   This suit was properly brought in the circuit court. The probate court had no jurisdiction of such a case.   *Dodson v. Scroggs*, 47 Mo. 286; *Cones v. Ward*, 47 Mo. 289; *Tit-*

*terington v. Hooker*, 58 Mo. 594; *Pearce v. Calhoun*, 59 Mo. 272.

8. No motion for new trial was necessary. *O'Connor v. Koch*, 56 Mo. 261; *Parker v. Railroad Co.*, 44 Mo. 420; *Bruce v. Vogel*, 38 Mo. 104.

*Willard P. Hall* for respondents.

1. A motion for a new trial was necessary. *Bishop v. Ransom*, 39 Mo. 416; *Bateson v. Clark*, 37 Mo. 31; *Hannibal & St. Joseph R. R. Co. v. Clark*, 68 Mo. 374; *Brady v. Connelly*, 52 Mo. 19.

2. The executor of Gregory was a necessary party to this suit—hence the circuit court had no jurisdiction. Jurisdiction was with the probate court. Sess. Acts 1865–6, p. 83; *Werneckee v. Kenyon*, 66 Mo. 284; *Ensworth v. Curd*, 68 Mo. 282; *Dodson v. Scroggs*, 47 Mo. 287 to 289; 58 Mo. 593; 59 Mo. 271.

3. Plaintiffs cannot maintain this suit as administrators. *State ex rel. Adams v. Campbell*, 10 Mo. 726; *State v. Matson*, 44 Mo. 307; *State v. Thornton*, 56 Mo. 327.

4. In 1826, Mary Hall, the only surviving child of Jehu Hall, deceased, had a cause of action against Gregory, if the allegations in the petition are true. He had then been administrator of Hall's estate for twelve years, and had made no inventory, no settlement and no distribution of the estate. He had treated said estate as his own and had converted it to his own use. Mary Hall married Isaac Tillett in 1826, and she became of age in 1831. The statute of limitation, therefore, ran against her from the time Gregory came to Missouri, in 1833, and this suit is barred by said statute. *Keeton v. Keeton*, 20 Mo. 542 and 543; 13 Mo. 217; 14 Mo. 431.

5. Even if no cause of action accrued till the removal of Gregory to Missouri in 1833, still the action is barred. Mrs. Tillett died in 1837. The statute began to run then at least.

6. The petition does not charge that Gregory's absconding and concealment prevented the commencement of an action against him by Mrs. Tillett; simply that her infant children were not acquainted with their rights; nor is there any allegation that inquiry was made by any party in interest after Gregory in Tennessee, nor as to his removal to Missouri. It is alleged that he loaned money, made investments and accumulated a large fortune, all in his own name. It is absurd to call such conduct a clandestine removal. His removal was not such a one as would prevent the running of the statute. *Bobb v. Shipley*, 1 Mo. 229; *Cartmill v. Hopkins*, 2 Mo. 220.

7. This suit is barred by the gross laches of all persons who are interested in the estate of Jehu Hall. Angell on Limitations, §§ 190, 470, 471; 27 Mo. 288; 23 Grattan 212; 2 Wallace 87; Kerr on Frauds, 303, *et seq*; 17 Grattan 544; *Wood v. Green*, 2 Curtis C. C. 202; *Landrum v. Union Bank*, 63 Mo. 52; *Stevenson v. Saline County*, 65 Mo. 425; *Bliss v. Prichard*, 67 Mo. 183; 9 Pick. 244; 8 Allen 131; *Stearns v. Page*, 7 How. 829; 1 Curtis C. C. 220; *Keeton v. Keeton*, 20 Mo. 530, 539; *Salmons v. Davis*, 29 Mo. 181; *The State v. West*, 68 Mo. 232.

*H. M. Pollard* also for respondents.

Laches of the plaintiffs and their predecessors in interest is a complete bar to this action. *State v. West*, 68 Mo. 232; *Bliss v. Prichard*, 67 Mo. 181; Kerr on Fraud & Mist., pp. 303 to 305; Story Eq., § 1520; *Johnson v. Soulmain*, 18 Ala. 50; *Bradshaw v. Yates*, 67 Mo. 232; *Landrum v. Union Bank*, 63 Mo. 56; *Godden v. Kimmell*, 99 U. S. 201; *Brown v. Buena Vista*, 95 U. S. 160; *Sullivan v. Railroad Co.*, 94 U. S. 811.

I.

SHERWOOD, C. J.—There was no necessity for a motion for a rehearing of the grounds upon which the court dis-

missed the petition.    *O'Connor v. Koch*, 56 Mo. 261, and
cases cited.

## II.

We have no doubt, either, as to the point concerning
jurisdiction.    This question has been recently discussed in
this court, and the conclusion reached that though in the
ordinary routine of administration the probate court has
original and exclusive jurisdiction, yet that such jurisdiction
does not extend over matters of purely equitable cognizance.
The allegations of the petition, in this instance, show very
conspicuously that the probate court, a court of statutory
origin and limited jurisdiction, is endowed with no powers
by the law of its organization, and it is the possessor of no
others, whereby it can follow a trust fund through all its
various transformations from money into personal and real
property during a long series of years.

This is no case of a demand against an estate for the
debt of the decedent, where the allowance of that demand
would be followed in usual course by an order for the sale
of the lands for the payment of the debt, and where, of
course, the remedy at law being amply efficacious would
constitute an insuperable obstacle to equitable interposition,
but a case where the beneficiaries, the pursuers of the trust
fund, may, upon sufficient evidence of the conversion of
that fund into certain specific property, elect to take the
property itself; in which event it is quite obvious that the
legislature has furnished the probate court with no machin-
ery whereby the property *in specie*, the result of the mis-
appropriation of the trust fund, could be delivered to the
beneficiary.    And this is especially true if that property
should consist of landed estates; for it would scarcely be
seriously insisted that such court could, without transcend-
ing its statutory functions, without overstepping the nar-
row boundary of its strictly legislative authority, assume
to itself the exercise of chancery powers, and doing so,
proceed to enter a decree declaring the rights of the parties

and divesting the title out of the heirs or devisees of the deceased trustee, proceed to vest it in the original and rightful owners of the trust fund, or those who succeed to their rights. And it would seem that an equal difficulty would attend the delivery to such parties by order of the probate court of any personal property, the result of the conversion of the trust fund; for such property would in law, belong to the legal representatives of the deceased misappropriator of the trust fund, and the only order the probate court could make in the premises, under the statute, would be for its sale, or distribution in the usual course of administration, and could entertain no suit by the beneficiaries for the recovery of the specific property, to which, according to the authorities, they are equitably entitled, if they exercise their option to that effect. 2 Story Eq. Jur., § 1211, and cases cited.

These considerations induce us to reiterate our conviction that a court of equity is the only *forum* where a party can safely appeal in this class of cases; a *forum* which, at one hearing and one decree, can with its peculiarly flexible powers—powers unknown to other jurisdictions—adjust with nicety all conflicting interests, thus at once avoiding a multiplicity of suits and affording a measure of justice both adequate and final.

### III.

It was an erroneous ruling to dismiss the petition because there were no proper parties plaintiff, or that Lawson, the administrator of Gregory's estate, was a necessary party defendant, or that Tillett's heirs were necessary parties plaintiff, since our statute has made ample provision for such contingencies, by providing that: "When a complete determination of the controversy cannot be had without the presence of other parties, the court may order them to be brought in by an amendment of the petition or by a supplemental petition and a new summons." 1 R. S. 1879, § 3568. Under this section it was the duty of the

court, if there was a defect of parties, either plaintiff or de- fendant, to have taken the course pointed out by the stat- ute, and so it was held in *Hayden v. Marmaduke*, 19 Mo. 403.    The code of New York, from which ours is derived, contains a similar provision, (Voorhies N. Y. Code 1857, § 122,) except that the word "must" is employed instead of the word "may," and the ruling in that state has been like that above noted.    *Davis v. Mayor*, 2 Duer 663; *State, etc., v. Mayor*, 3 Duer 119.

Besides, a party cannot take objections of the charac- ter mentioned at the trial.    We are not aware that any objection has ever been taken in this State to the introduc- tion of any evidence on the trial, except upon the score that the petition did not "state facts sufficient to constitute a cause of action."    According to express statutory pro- vision, the objection of a defect of parties can only be taken by demurrer or answer.    R. S. 1879, § 3519; *Rueg- ger v. Lindenberger*, 53 Mo. 365; *Horstkotte v. Menier*, 50 Mo. 158; *Dunn v. Railroad*, 68 Mo. 268; *State v. Sappington*, 68 Mo. 454.    In New York it is held that at the trial, but two objections can be taken, the one as to the jurisdiction of the court, the other as to the petition not stating facts suffi- cient, etc.    *Winterson v. Railroad*, 2 Hilton 389; *Ludington v. Taft*, 10 Barb. 447.

So far as Lawson, the administrator of Gregory, was concerned, it was not necessary to amend the petition, as by that he was already made a party defendant; all that was necessary for the court to do, if satisfied that Lawson was a necessary party, was to set aside its order respecting him, thus reinstating him as such party.

Relative to the point as to who are necessary parties plaintiff, we regard the present plaintiffs in that light, being the administrators and legal representatives of those, who if living, might have maintained the present proceeding, and the authorities cited for them, we think, show this. But they are proper and necessary parties plaintiff, only so far as concerns the personal estate of their respective de-

cedents. The heirs of those decedents, being interested beneficially, in the final distribution of the personal estate as well as of the realty, are necessary parties also, and this for two reasons : the one that they may exercise their equitable option to take the personal and real property *in specie* if they so desire, (2 Story Eq. Jur., *supra*;) the other that all persons materially interested, whether legally or beneficially in the subject matter of the suit, should be made parties to it, in order that the decree, when made, should not be grounded upon a partial view of the real merits, but upon a comprehensive survey of the whole case, and of the various and conflicting interests of all concerned, or to be affected thereby. This is in accordance with the equitable rule, and with the familiar expression that " equity in all cases delights to do complete justice, and not by halves." *Knight v. Knight*, 3 P. Wms. 331 ; Story Eq. Plead., § 72 ; 2 Story Eq. Jur., § 1526.

## IV.

We are not of opinion, for the foregoing reasons and others which will readily suggest themselves, that there has been any misjoinder of causes of action, or that the petition is multifarious.

## V.

The next point for consideration is, whether the petition states facts sufficient to constitute a cause of action. Considered apart from the question of laches, or the statutory bar, there can be but one opinion as to the sufficiency of the petition, for its allegations set forth a very flagrant instance of the abuse of a trust. If a party makes his objection by demurrer to a petition, on the ground that it does not state facts, etc., he is thereby deemed to confess the truth of its allegations, denying only their legal sufficiency ; and it is not unreasonable that a like result should follow, when he takes the same objection, *ore tenus*, instead of in the ordinary way. Taking this as true, then, the alle-

gations of the present petition stand confessed, at least so far as concerns this occasion, and the case is to be examined as if coming up on a general demurrer.

## VI.

Regarding the petition then as sufficient in a general point of view, is it to be regarded as insufficient, because showing upon its face a great lapse of time to have intervened since the breach of trust took place? We are not of that opinion, and for these reasons:

The departure of Gregory from North Carolina, and his studious concealment of his whereabouts, would prevent the statute from running. The language of our statute is express on this point, (R. S. 1879, § 3244,) and is couched in the same language as was the statute of 1835, *Harper v. Pope*, 9 Mo. 402; *Wells v. Halpin*, 59 Mo. 92, and cases cited.

The statute would not run for the further reason that as the purchase by Gregory of property in his own name, with the funds of the estate created a trust in favor of the latter, such possession would not be adverse until the trustee had done some open and unequivocal act denying the right of the *cestui que trust*. Until that occurrence the possession of the trustee was that of those beneficially entitled. The admitted allegations of the petition show that the possession of Gregory was never adverse, but that he always acknowledged the character in which he held the property. In such circumstances the statute does not run. *Norris' Appeal*, 71 Pa. St. 106; *Carter v. Feland*, 17 Mo. 383.

Nor does the statutory bar attach for the additional reason that no letters had been granted on the estates of those whom the plaintiffs represent. The authorities cited on their behalf fully support this position.

Nor under the allegations of the petition is laches chargeable to plaintiffs; for laches presupposes not only delay in the institution of proceedings for relief, but such knowledge of facts on which the claim for relief is bot-

tomed, as renders that delay culpable. For this reason this case is distinguishable from that of *State ex rel. Polk Co. v. West*, 68 Mo. 232.

The judgment is reversed and the cause remanded. NAPTON and NORTON, JJ., concur; HOUGH and HENRY, JJ., dissent on the jurisdictional point.

HOUGH AND HENRY, JJ., DISSENTING.— The probate court had exclusive jurisdiction of the subject matter of this suit. The whole purpose of the bill was to obtain an allowance against the estate of Gregory, for the sum of $40,000 and interest, that being the value of property alleged to have been held by him in trust and converted to his own use. It was a mere money demand which should have been presented to the probate court for allowance. Acts 1865–6, p. 83.