ROCHESTER FORD, Administrator, Respondent, v. MARY R. TALMAGE, Executrix, Appellant.

### St. Louis Court of Appeals, April 16, 1889.

**Jurisdiction: PROBATE COURTS.** A probate court has no jurisdiction to determine the indebtedness to a deceased person's estate of one of its distributees, and to set off the amount of such indebtedness against such distributee's share of the estate, in making an order of distribution.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *George S. Grover*, for the appellant.

The claim of Mrs. Talmage, as executrix, etc., under the assignment of Myles O'Donnell to A. A. Talmage to the distributive share of Myles O'Donnell in the residue of $7, 740.91 of the estate of James M. O'Donnell, is superior in right to the claim of Ford, administrator of said estate, based upon the judgments against Cook and Myles O'Donnell. The assignment antedated those judgments; the judgments were simple judgments at law upon simple legal obligations; were not made a separate charge against Myles O'Donnell's interest in his father's estate, nor were they liens upon it. Mrs. Talmage was not a party to the cause of Ford, administrator, against Cook and O'Donnell, and therefore those judgments, being subsequent to the assignment of Talmage, could not affect her interest under the assignment. The probate court had no jurisdiction to offset the indebtedness of Myles O'Donnell to the estate against his distributive share therein.

*Silas B. Jones*, for the respondent.

In the case of *Jeffs v. Wood*, 2 P. Williams, 128, decided in 1723, it was held that where a legatee is

debtor to the estate from which he claims his legacy, his debt shall be considered as a satisfaction *pro tanto* of his legacy. To the same effect is the case of *Ranking v. Barnard*, 5 Mad. Ch. 32; and to the same effect is the case of *Courtenay v. Williams*, 3 Hare, 538. These cases have established the law for England, and have never been called into question there. In this country they have been followed without dissent. *Clarke v. Bogardus*, 12 Wend. 67; *Stagg v. Beekman*, 2 Ed. Ch. 89; *Brokaw v. Hudson*, 27 N. J. Eq. 135; *Strong v. Bass*, 35 Pa. St. 333; *Springer's Appeal*, 29 Pa. St. 208; *Armour v. Kendall*, 15 R. I. 193; *Tinkham v. Smith*, 56 Vt. 187. These authorities, and others which might be cited, establish beyond controversy the proposition, that a legatee or distributee who is indebted to an estate, where his debt is greater than his distributive share, shall take nothing from the estate, and where his debt is less than his distributive share, shall take only his share less his debt. It is not contended by us that the probate courts of this state have general equity or chancery powers; and, on the other hand, it is equally clear that they have not general common-law powers. they are courts of limited jurisdiction, created by statute law, exercising jurisdiction over certain subjects specially entrusted to them by the statutes. *Elliott v. Wilson*, 27 Mo. App. 218; *Church v. McIlhinney*, 61 Mo. 540; *Church v. Robberson*, 71 Mo. 326; *Butler v. Lawson*, 72 Mo. 227. While the probate court has neither general equity nor common-law powers, in matters over which it has jurisdiction, it is governed by the law of the state, whether that law has its origin in courts of equity or courts of common law, or is the positive command of statute. *Miller v. Woodward*, 8 Mo. 169; *Miller v. Iron County*, 29 Mo. 122; *Titterington v. Hooker*, 58 Mo. 593; *Pearce v. Calhoun*, 59 Mo. 271; *Ensworth v. Curd*, 68 Mo. 282; *French v. Stratton*, 79 Mo. 560. See dissenting opinion of Hough, J., in case of *Church v. Robberson*, 71 Mo. 339, where all

Missouri cases to that date are cited. It must be clear that the probate court has all the power necessary to fully exercise its jurisdiction over matters confided to it by the statute. There can be no question that the probate court is competent to make any judicial inquiry necessary to enable it to carry out fully and completely its jurisdiction in any given matter. The probate court has the express power to distribute to the parties entitled thereto the estate of a decedent. But how can the probate court distribute an estate without first determining who is entitled to distribution? It is no sound argument against its power to say that such an inquiry necessitates judicial investigation into facts. Talmage has no greater rights than Myles O'Donnell. Indeed, it cannot be necessary in this court to cite authorities for the general proposition that an assignee of a mere chose in action has no greater rights than his assignor. We submit, as a general proposition, that the judgments against Myles O'Donnell were *prima-facie* evidence of his indebtedness to the estate of James M. O'Donnell. In a controversy between a person claiming to be a creditor of another person and a stranger, a judgment in favor of the alleged creditor against the alleged debtor is *prima-facie* evidence of the debt. *Vogt v. Ticknor*, 48 N. H. 241; *Church v. Chapin*, 35 Vt. 223 (231); *Goodnow v. Smith*, 97 Mass. 69; *Inman v. Mead*, 97 Mass. 310; *Picot v. Signiago*, 27 Mo. 125; Bump Fraud. C., page 576 *et seq.;* 2 Whart. Ev., sec. 823. To the effect that a judgment is evidence against the world of its own rendition and existence and of all the legal consequences resulting therefrom, see Greenl. Ev., sec. 538; *Foster v. Nowlin*, 4 Mo. 18; *Cravens v. Jamison*, 59 Mo. 68; *Ins. Co. v. Cravens*, 69 Mo. 72.

BIGGS, J., delivered the opinion of the court.

This is an appeal from an order of distribution made by the probate court of the city of St. Louis, in the settlement of the estate of James M. O'Donnell, deceased.

James M. O'Donnell died intestate and one Myles O'Donnell is one of his heirs-at-law. On the first day of December, 1886, Myles O'Donnell, for value, assigned and conveyed to A. A. Talmage, now deceased, all of his right, title, and interest in his deceased father's estate. On the twenty-eighth of June, 1887, A. A. Talmage died testate, and Mary R. Talmage, the appellant, was by the will of deceased appointed executrix. Upon a final settlement of the estate of James M. O'Donnell, there was a balance in the hands of the administrator (the respondent) for distribution. In making a final distribution of this balance, the probate court excluded the appellant, who claimed that she was entitled to the moiety or share due Myles O'Donnell by virtue of the assignment aforesaid; from all participation therein, for the reason that at the time of the death of James M. O'Donnell, his son Myles, as a member of the firm of Hugh Cook & Co., was largely indebted to deceased, and that at the time of the distribution this indebtedness remained unpaid, and was greatly in excess of the distributive share of the said Myles. Appellant filed exceptions to this distribution, contending that the respondent had no right under the law as against appellant to satisfy the amount due her testator, on a distribution of said estate, by off-setting any alleged indebtedness from Myles O'Donnell to his father's estate. That at the time of the conveyance to A. A. Talmage by Myles O'Donnell, there was no judgment or other lien against the interest so conveyed and the appellant denied that the administrator of James M. O'Donnell had any legal or equitable right to appropriate the distributive share due the assignee of Myles O'Donnell, in satisfaction of any indebtedness of the latter, if in fact, any such indebtedness existed. Appellant also argued that if any such right existed, that the probate court had no right to pass on or enforce it. The probate court overruled appellant's objections and

approved the final settlement from which she appealed to the circuit court. In the circuit court the case was submitted to the court on the following agreed statement of facts, to-wit:

"For the purpose of saving both the time of the court and counsel in the trial of this cause, this stipulation is entered into, defining the matters in controversy herein, and also agreeing as to certain matters of evidence touching the same.

"*First.* Rochester Ford, administrator herein, insists that Mrs. Mary R. Talmage, the executrix of A. A. Talmage, deceased, had no right to prosecute this appeal to this court, and that this court has no jurisdiction of the same; and it is agreed by the parties hereto that nothing herein contained shall be construed as a waiver of the alleged right of said Ford to insist that this court has no jurisdiction of this cause, and that the appeal herein should be dismissed.

"*Second.* On the merits of the cause the only point in controversy between the parties hereto is, whether the judgment of the probate court is right, in so far as the distributive share of Myles O'Donnell is applied therein to the satisfaction *pro tanto* of certain judgments obtained against him by the administrator."

Touching the evidence bearing upon the points in controversy herein, as above set out, the following is agreed to:

"On October 30, 1886, the said Ford, administrator, instituted in this court and prosecuted to final judgment, a case against Hugh Cook and Myles O'Donnell, being number 72,079, and the record in said case in this court may be considered as in evidence in this cause.

"On the sixteenth day of December, 1887, the said administrator instituted in this court a suit against Hugh Cook and Myles O'Donnell and prosecuted the same to final judgment, which cause is number 75,457 and the record in said case in this court may be considered as in evidence in this cause. To the introduction

of both of said judgments Mrs. Talmage objects on the ground that they are not conclusive or binding upon the estate of A. A. Talmage.

"On December 1, 1886, Myles O'Donnell, a son and heir-at-law of the said James M. O'Donnell, deceased, assigned his interest in his father's estate to A. A. Talmage, then alive, but now deceased, of whose estate Mrs. Mary R. Talmage is executrix, and said assignment is hereto attached, and may be considered as in evidence in this case.

"On January 16, 1888, said Mary R. Talmage served on the said Ford, administrator, a paper hereto attached, marked exhibit "A," and afterwards, on the same day said Ford, administrator, served on the said Mary R, Talmage a paper hereto attached, marked exhibit "B."

"The written opinion of Judge WOERNER, rendered in the probate court, may be considered in evidence herein for the purpose of showing the grounds of the judgment of the probate court, appealed from herein, and it is agreed that said written opinion correctly states the account of the administrator at the time of the rendition of the judgment of the probate court appealed from. It is admitted that Myles O'Donnell is now, and has been, insolvent since the death of testator.

"Either side may introduce any further testimony on the trial of this cause, which is relevant to the points in controversy hereinabove stated."

The judgment of the circuit court was also against Mrs. Talmage, and she brings the case to this court by appeal.

The questions, presented by this record, are not free from legal difficulties. If we understand counsel for respondent, the contention made by him is, that probate courts have full power under the statute to determine *all* questions arising out of the distribution of estates. That these courts have the exclusive right

Ford, Adm'r, v. Talmage.

under the statute to determine *who* are entitled to distribution, and *how much* each distributee is entitled to receive. From these premises, counsel argues, that the probate court in the case at bar had the authority, on the final settlement, to determine how much was due to the assignee of Myles O'Donnell, and that in determining that question the court had the authority to determine the question of indebtedness from Myles O'Donnell to the estate, and if found to exist, to order the same to be deducted from the distributive share claimed by appellant; and that it made no difference upon what principle this right existed, or what kind of a judicial inquiry it necessitated; yet as the probate court had jurisdiction, the rights of the parties would be worked out on the same lines and according to the same rules, as if the investigation was in a court of chancery, or other court of common-law jurisdiction.

Probate courts in this state are of limited jurisdiction as contradistinguished from courts of general or common-law jurisdiction. Their powers are entirely derivative and they can exercise no power unless conferred by statute, or, as in this state, by organic law. It is the settled law of this state, that a judge of probate possesses none of the powers of a chancellor, unless the right or jurisdiction is expressly conferred by statute, or is necessarily incident to the proper exercise of duties directly imposed. *First Baptist Church v. Robberson*, 71 Mo. 327; *Butler v. Lawson*, 72 Mo. 227; *Hammons v. Renfrow*, 84 Mo. 341; *Scudder v. Ames*, 89 Mo. 496; *Presbyterian Church v. McElhinney*, 61 Mo. 540.

The probate court in its action in this case certainly exercised the powers of a chancellor, and in determining the rights of appellant applied principles that were purely equitable in their character. Did it have that right? There can be no question that, under certain circumstances, the right exists, to deduct from the distributive share of one of the heirs any indebtedness due from the heir to the deceased at the time of his

death and remaining unpaid.   But just on what ground this right is placed, is a matter of some difference and speculation by the authorities.   We cannot treat such matter of indebtedness as an advancement and predicate the right of the court to make the deduction under the authority of our statute concerning advancements, because an advancement is not a debt.   It cannot be regarded as an off-set and treated accordingly because there is no mutual indebtedness.   It is not the enforcement of an equitable lien, because there can possibly be no lien on the interest of the distributee, as security for the debt in favor of the administrator.   We think that the true ground on which this doctrine rests, is the equitable right of the administrator, by appropriate proceedings to *impound* the interest of the distributee, and by decree of court, have the debt, if larger than the distributive share, paid *pro tanto*, by applying the amount due on distribution as a credit thereon.   *Ballard v. Marsdrew*, 14 R. Chan. Div. 374.

It is very evident that this assumption of jurisdiction by the probate court ( if it can be sustained at all ) can only be justified on the theory that as the law has conferred on the probate courts the authority to finally settle and *distribute* the estates of deceased persons, that by necessary implication the right is given to determine *all* questions arising out of or connected with the subject-matter of the jurisdiction conferred.   This is undoubtedly true as to the ordinary routine business connected with the settlement and distribution of estates.

It would not be pretended that the probate court would have authority to entertain a proceeding in equity against the estate of a deceased trustee, the object of which was to trace and identify through many transfers, and extending over a long period of time, certain trust funds or property ; yet this might become necessary to the complete administration of an estate

Our statute provides that the probate court may specifically enforce a contract for the conveyance of land by a deceased person, provided the contract is in writing. In the absence of such a statute, could it be successfully maintained that this right rested with the probate court, because it was necessary to the complete administration of the estate? We think not. Our supreme court has expressly decided that unless the contract is in *writing*, the probate court has no jurisdiction. *Schulter's Adm'r v. Bockwinkle's Adm'r*, 19 Mo. 647.

If doubts should arise as to the duties of an executor growing out of the proper construction of a will, or if there should be a controversy in such a case between the executor and a legatee as to the duties of the one, and the rights of the other, the circuit court would be the proper forum to settle all such questions. *First Baptist Church v. Robberson*, 71 Mo. 327.

Now, in the case at bar, the probate court not only assumed jurisdiction in a case of purely equitable cognizance, but the court in effect prosecuted a suit against appellant for the collection of a debt claimed to be *due* the estate from Myles O'Donnell. By its judgment it determined that the debt was valid, and was unpaid, and in the same judgment it undertook and did satisfy the indebtedness so found, by applying the distributive share claimed by Mrs. Talmage. This was certainly a very direct and expeditious way of disposing of the matter, and it might be for the best interest of estates of deceased persons that probate courts should be clothed with such powers, but it is a sufficient answer to this, to say that the legislature has not seen fit to confer any such authority. It is *only* where a party comes into the probate court for the purpose of having a demand *allowed* against an estate, and it is ascertained that the claimant is indebted to the estate, that the probate court has authority to *pass on any demand due the estate*,

and then only as a matter of off-set to the claim presented against the estate.

The matters in controversy, between appellant and respondent, open a very wide field for judicial inquiry, and their proper solution might not only embrace questions of fact, but would involve some intricate questions of equity law, which, we think, would place the case beyond the scope or jurisdiction of the probate court.

The power of a court of probate to determine and settle such equities between the estate and the distributee, as are involved in this case, has never been passed upon (so far as our examination has gone), except in case of *Hancock v. Hubbard*, 19 Pick. (Mass.) 172. In that case the probate court made a similar order to the one made by the probate court in the case under consideration, and the supreme court of Massachusetts said: "It is clear, we think, that a court of probate cannot take notice of a debt due from an heir to the estate, and in effect direct the payment of it in the form of a decree of distribution. It is a matter not within the jurisdiction of that court, and a decree thus directing the distributive share of one heir to be paid over to another on the ground of compelling payment of a debt due by such distributee to the estate, is wholly void. It is in this respect similar to a decree directing an administrator to pay a debt, which is a subject not within the probate jurisdiction, and is therefore void, and imposes no duty on the administrator to pay such debt."

The learned counsel for respondent contends, "that this case is not authority against the position held by him, because the statute law of Massachusetts is essentially different from that of Missouri. That under the law of Missouri, upon a final settlement and order of distribution, a final judgment goes against the administrator upon which an execution may issue. That in Massachusetts the heir would have to bring a separate suit for the amount of his distributive share, and that in

this proceeding the administrator would have an oppor-
tunity to insist on a deduction of the distributive share
from the debt." This argument is not good, because
the administrator is not compelled to make final settle-
ment and obtain an order of final distribution in this
estate, until this question is settled. The courts are
open to him. We can see no reason why this matter
cannot be adjudicated and finally settled between the
estate and Mrs. Talmage in a court having full power
and authority to determine the rights and equities of
both the estate and Mrs. Talmage. When this has been
done, then the estate can be finally settled and the dis-
tributive share of Mrs Talmage disposed of according to
the judgment of such court. It would not be proper
for us to indicate our opinion of the merits of this con-
troversy.

The judgment in this case will be reversed and the
cause remanded to the circuit court, with directions to
order the probate court to vacate its judgment, or order
of final distribution in said estate. All the judges con-
curring, it is so ordered.