THE MT. OLIVE AND ST. LOUIS COAL COMPANY, Appellant, v. ESTATE OF CHARLES SLEVIN, Deceased; CATHERINE SLEVIN, Administratrix, Respondent.

St. Louis Court of Appeals, January 16, 1894.

1. **Jurisdiction of Probate Court:** ACTION FOR MONEY HAD AND RECEIVED. Courts of law have jurisdiction of an action for money had and received, except when adequate relief can only be obtained in a court of chancery, or the transactions are complicated and a discovery from the defendant is requisite. Accordingly, a probate court has jurisdiction of a demand against the estate of a decedent for money had and received, which does not fall within the exceptions noted.

2. **Attorney and Client:** INSUFFICIENCY OF THE EVIDENCE TO ESTABLISH THAT RELATION. The evidence in this cause is considered, and is *held* insufficient to establish authority on the part of an attorney to appear in a cause for one of the parties thereto.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Eber Peacock* for appellant.

(1) The money being paid into court by the depot company, on notification plaintiff surrendered its possession and the depot company entered on the land and sold the improvements which had been transferred by plaintiff to Charles Slevin. Charles Slevin would, therefore, be estopped from questioning plaintiff's right to the $1,000, assessed as the value of these improvements. *Rice v. Groffman*, 56 Mo. 434. The defendant administratrix took and dealt with the fund as she found it; the $1,000 so received to the use of plaintiff, when she became qualified, in her hands was still a fund received to the use of plaintiff and the estate of Charles Slevin was liable to that extent. *McLaughlin v. McLaughlin*, 16 Mo. 242; *Brown v. Finley*, 18 Mo. 375; *George v. Williamson*, 26 Mo. 190; *Hall v. Callahan*, 66 Mo. 323. She took the fruits of a judicial proceeding and could not be permitted to question it. *Austin v. Loring*, 63 Mo. 419; *Hathaway v. Payne*, 34 N. Y. 92. (2) Eugene C. Slevin, having acted on the authority of Charles Slevin, as communicated to him by Mr. Cody (Charles Slevin's man of affairs), and having filed an answer and acted in the Union Depot Company's condemnation suit as Charles Slevin's attorney of record, third parties who dealt with him as such attorney in matters pertaining to such suit will be protected as to such dealings, even although it may appear that he as such attorney may have been notified to discontinue such relation, unless it appear that such third parties had knowledge of such

notice to discontinue such relation. *Fanning v. Cobb,* 20 Mo. 577; *Rice v. Groffman,* 56 Mo. 434; *Cupples v. Whelan,* 61 Mo. 583; *Summerville v. Railroad,* 62 Mo. 391. Moreover there was some evidence of an authority for the appearance of Eugene C. Slevin as attorney for Charles Slevin.

*J. P. Maginn* for respondent.

BIGGS, J.—This action originated in the probate court. The plaintiff seeks to have a demand of $1,000 allowed against the estate of Charles Slevin, deceased. The petition states an action for money had and received. The probate court dismissed the proceeding for want of jurisdiction, and the circuit court on a trial *de novo* sustained a demurrer to the evidence and entered judgment for the estate. The case is here on the plaintiff's appeal. The record presents but two questions: *First.* Had the probate court jurisdiction of the demand? *Second.* If so, did the circuit court commit error in its action?

The petition states substantially that, in 1891, the Union Depot Company instituted suit in the circuit court against Charles Slevin as the owner of certain real estate situated in the city of St. Louis, the object of which was to condemn this property for depot purposes; that Slevin was served with process and that he appeared to the action through his attorney, Eugene C. Slevin, and filed an answer; that at the time the plaintiff was in possession of the property as a tenant under a letting from year to year; that it owned certain improvements which it had erected on the premises, and which it had the right under its contract with Slevin to remove; that the plaintiff was not made a party to the condemnation proceeding; that, when the commissioners met for the purpose of assessing the

damages, the right of the plaintiff to damages for his improvements was discussed and conceded by all parties, but that, by reason of the fact that the plaintiff was not a party, no assessment could be made directly in its favor; that thereupon it was agreed between the plaintiff and Eugene C. Slevin, and so understood by the representative of the Union Depot Company and the commissioners, that the plaintiff should transfer to Charles Slevin his improvements, and the commissioners would then assess the entire damage in the name of Charles Slevin, but that in making the estimates they should assess the damages separately, so as to establish a basis of settlement between Slevin and the plaintiff; that the plaintiff did so transfer his improvements to Charles Slevin, and the commissioners, acting under the foregoing agreement, assessed the damage to the plaintiff's improvements at one $1,000, and the damage to the land $71,200; that immediately upon the coming in of the report of the commissioners, the Union Depot Company deposited the total amount of the assessment in court to the use of Slevin, and immediately took possession of the property including the improvements, which were thereby lost to the plaintiff, and that soon thereafter Slevin died and Catherine Slevin was appointed administratrix of his estate.

It is the settled law this state that the judges of probate courts can not assume jurisdiction in matters which are cognizable only by courts of equity, and that they can not exercise the powers of a chancellor unless the right of jurisdiction is expressly conferred by statute, or is necessarily incident to the proper exercise of duties directly imposed. *Ford's Adm'r v. Talmage*, 36 Mo. App. 65; *Miller v. Woodward*, 8 Mo. 169; *First Baptist Church v. Robberson*, 71 Mo. 326; *Mead v. Jennings*, 46 Mo 91; *Collierr's will,* 40 Mo. 287; *Butler v.*

*Lawson*, 72 Mo. 227; *Hammons v. Renfrow*, 84 Mo. 332.

The statute confers on probate courts jurisdiction to "hear and determine all suits and other proceedings instituted against executors or administrators upon any *demand* against the estate of their testator or intestate," etc. In the case of *Hammons v. Renfrow, supra,* the supreme court said in reference to this section and others: "These sections, or either of them, seem ample enough to confer jurisdiction upon the probate court, whatever may be the nature of the demand in in this particular, whether equitable or legal. * * * The case at bar is unlike and distinguishable from the case of *First Baptist Church v. Robberson,* 71 Mo. 326; and *Butler v. Lawson,* 72 Mo. 227. The plain and simple facts of this case do not in our opinion render them 'matters of purely equitable cognizance' within the rule laid down in those cases, and governable by the doctrine there expressed. Those cases upon an inspection will be found to be widely different in their scope and comprehension from the simple account filed in this case as the basis of plaintiff's demand, or the evidence offered in the support thereof. This case is, we think, more in the nature of an action at law for money had and received on the part of the intestate for the use and benefit of said children, than an action or bill in chancery for matters of purely equitable cognizance," etc.

Originally actions for money had and received were of purely equitable cognizance. However, courts of law assumed jurisdiction in such cases, and this practice is now universally recognized and acted on, except where adequate relief can only be obtained in a court of chancery, or where the transactions are complicated and a discovery from the defendant is requisite. 2 Story on Equity Jurisprudence, section 1256; *New York Ins. Co. v. Roulet,* 24 Wend. 505. Now, if we were dealing

with a case falling within the exception, we would hold that the probate court had no jurisdiction. As it is, we have a proceeding in the nature of an action at law for money had and received, It is true, that it involves the enforcement of a constructive trust, but no attempt is made to follow the trust fund. The plaintiff seeks a judgment of allowance simply, like that to which an ordinary creditor is entitled. We think it evident, both upon reason and authority, that the probate court had jurisdiction of the action.

The evidence introduced by the plaintiff tended to establish all the allegations of the petition, except that Charles Slevin appeared to the action through his attorney, Eugene C. Slevin. We can find no substantial evidence in the record of that fact. As this is the crucial fact in the case, the action of the court in directing a finding for the defendant must be upheld.

The only evidence introduced by the plaintiff on that subject was the testimony of Eugene C. Slevin. After testifying that he had acted as the legal adviser and attorney of the deceased, the witness said: "The manner in which I came to get into the litigation of the Union Depot case was this: There was no one to represent my uncle in this affair with the Union Depot Company, and it seemed to me absolutely necessary that some one should do this; and who should do it, except the one who had always represented him in his legal matters? It seemed to me he would be the most proper party to represent him, the one who had always attended to his business matters; and I had a conference with Mr. Cody, who was his man of affairs, and we decided I ought to take steps to protect his interest therein in that suit, and I accordingly filed an answer. Mr. Cody told me that he had spoken to my uncle about the matter, and uncle had said: 'All right, let Eugene go ahead.' I then filed the answers and

replies.  Some days afterwards, Mr. Cody said—only a couple of days afterwards is my impression, anyhow it was after I had filed my answer and entered my appearance and entered his appearance in those suits—Mr. Cody came down to me and said: 'Your uncle Charles says, let that litigation alone, and don't do anything in it.'  I was puzzled what to do.  I knew my uncle's condition of mind very well; it was not anything as strong as it ought to be, or as he formerly was.  It It seemed absurd to me that he should let the Union Depot matter go, and yet, having filed the answer, I was either to withdraw as attorney of record or continue and let the thing drift along.  I concluded that it was my duty to proceed in the matter up to its final determination.''

The witness admitted that he had not represented the deceased for one or two years prior to the institution of the condemnation proceedings, and that he at no time had any conversation with the deceased in reference thereto.  He also admitted that the arrangement made by him touching the transfer of plaintiff's improvements to the deceased, and the assessment of damages thereof in the name of the deceased, was not communicated to the latter, and that the arrangements was gone into by him after he had gotten word from the deceased that he did not wish him to have anything to do with the case.  There was also evidence tending to prove that, for several years prior to his death, Charles Slevin had suffered from a stroke of paralysis; that, on account of this, he was unable to give his business matters his personal attention, and that Mr. Cody had acted as his man of affairs, having in charge the collection of rents and the payment of taxes and other disbursements; but there is no evidence in the record that Cody had any authority to employ

attorneys, or to look after matters in litigation. Cody himself testified that in small matters he did not consult the deceased, but in matters of any magnitude he did, and acted under his directions. Cody is asked whether he recollected anything about the *condemnation proceeding*, and he replied that he did not. He was then asked: "Do you remember of saying anything to Eugene C. Slevin about it (*i. e.* the suit)? *A.* No, sir. *Q.* If Eugene says you did? *A.* If he says I did, I suppose I did; but I don't remember it."

The most that can be made out of the statements of Eugene in reference to his authority to act as the attorney of the deceased is that Mr. Cody told him that the deceased had expressed a wish for him (Eugene) to look after the suit. That the deceased *did* so request is not supported by a scintilla of proof. Cody, it will be observed, was not asked about the *employment* of Eugene, but whether the latter had spoken to him about the *suit*. Therefore the equivocal admissions of Cody do not admit of the inference, that even he had *spoken* to the deceased about the employment of Eugene. If, therefore, Eugene had no authority in the first instance to appear as the attorney of the deceased, the arrangement by him and the plaintiff's attorney in reference to the transfer of the plaintiff's improvements to the deceased, and the assessment of the damages thereto in his name, was voluntary, and must be regarded us an unlawful and unwarranted act of interference by which the deceased was in no way bound either in law or in equity.

Our conclusion is that the judgment must be affirmed. It is so ordered. All the judges concur.